**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------

ACE ARTS, LLC,                                    Case No.  13 CIV 7307 (AJN)

           Plaintiff,

    v.

SONY/ATV MUSIC PUBLISHING, LLC
and APPLE CORPS LIMITED,

           Defendants.
------------------------------------------------------------


**DEFENDANT APPLE CORPS LIMITED'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS MOTION TO DISMISS PLAINTIFF ACE ARTS, LLC'S COMPLAINT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ..................................................................................................... 2

    A.    The Complaint In This Action ................................................................................ 2

    B.    The United Kingdom Action .................................................................................. 4

ARGUMENT ............................................................................................................................. 5

I.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM .................................................................................................................. 5

    A.    The Legal Standard ............................................................................................... 5

    B.    Ace Fails To State A Claim Under The Sherman Act ........................................... 6

        1.    Ace Fails To Plead A Relevant Market With Reference To Interchangeability And Cross-Elasticity Of Demand ................................ 7

        2.    Ace's Market Fails As An Impermissible Single-Product Market ............ 8

        3.    Ace Alleges No Injury To Market, Only Injury To Ace........................... 10

        4.    Even Were Ace's Claim Otherwise Sufficient, Defendants' Alleged Actions Were Privileged By The Noerr-Pennington Doctrine ................. 11

            (a)    Defendants' Purported Actions Are Privileged ........................... 11

            (b)    Ace's "Sham Litigation" Allegations Are Insufficient ................ 12

    C.    Ace's Declaratory Relief Action Cannot Lie Against Apple ............................... 15

    D.    Ace Fails to State a Claim Against Apple for Tortious Interference with Contract, Tortious Interference with Prospective Economic Relations, and Unfair Competition under N.Y. Common Law .................................................... 16

CONCLUSION........................................................................................................................ 18

# TABLE OF AUTHORITIES

Page

**Cases**

*Angel Music, Inc. v. ABC Sports, Inc.*,
  631 F. Supp. 429 (S.D.N.Y. 1986)..................................................................14

*Ark. Carpenters Health & Welfare Fund v. Bayer AG*,
  604 F.3d 98 (2d Cir. 2010)...........................................................................7

*Bayer Schering Pharma AG v. Sandoz, Inc.*,
  813 F. Supp. 2d 569 (S.D.N.Y. 2011)..............................................................8

*Bejjani v. Manhattan Sheraton Corp.*,
  No. 12 Civ. 6618 (JPO), 2013 U.S. Dist. LEXIS 90467 (S.D.N.Y. June 27, 2013) ................17

*Bell Atl. Corp. v. Twombly*,
  540 U.S. 554 (2007)........................................................................5, 16, 17

*Carell v. Shubert Org., Inc.*,
  104 F. Supp. 2d 236 (S.D.N.Y. 2000)............................................................9, 11

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)..........................................................................6

*Chapman v. N.Y. State Div. for Youth*,
  546 F.3d 230 (2d Cir. 2008)..........................................................................7

*Chen v. New Trend Apparel, Inc.*,
  No. 11 Civ. 324 (GBD), 2012 U.S. Dist. LEXIS 168417 (S.D.N.Y. July 25, 2012) ...............15

*Coastal States Marketing, Inc. v. Hunt*,
  694 F.2d 1358 (5th Cir. 1983) .....................................................................12

*Columbia Pictures Indus. v. Redd Horne*,
  749 F.2d 154 (3d Cir. 1984)....................................................................12, 13

*De Beers LV Trademark Ltd. v. Debeers Diamond Syndicate Inc.*,
  No. 04 CIV. 4099 (DLC), 2005 U.S. Dist. LEXIS 9307 (S.D.N.Y. May 18, 2005) ................13

*DirecTV, Inc. v. Lewis*,
  No. 03-CV-6241-CJS-JWF, 2005 U.S. Dist. LEXIS 8187 (W.D.N.Y. Apr. 29, 2005)
  ....................................................................................................12

*E & L Consulting, Ltd. v. Doman Indus.*,
  472 F.3d 23 (2d Cir. 2006).........................................................................10

*Edward B. Marks Music Corp. v. Colo. Magnetics, Inc.*,
  497 F.2d 285 (10th Cir. 1974) .....................................................................12

*Elektra Entm't Group, Inc. v. Schwartz*,
  No. CV-06-3533 (DGT), 2008 U.S. Dist. LEXIS 26183 (E.D.N.Y. Apr. 1, 2008)
  ....................................................................................................14

*Emigra Group, LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP,*
    612 F. Supp. 2d 330 (S.D.N.Y. 2009).....................................................................8

*First Nationwide Bank v. Gelt Funding Corp.,*
    27 F.3d 763 (2d Cir. 1994)...................................................................................6

*Flash Elecs. v. Universal Music,*
    312 F. Supp. 2d 379 (E.D.N.Y. 2004) .............................................................6, 8

*Ginx, Inc. v. Soho Alliance,*
    720 F. Supp. 2d 342 (S.D.N.Y. 2010)..................................................................13

*Global Discount Travel Servs., LLC v. TWA,*
    960 F. Supp. 701 (S.D.N.Y. 1997)......................................................................10

*Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.,*
    713 F. Supp. 2d 286 (S.D.N.Y. 2010)..................................................................8

*Joplin Enterprises v. Allen,*
    795 F. Supp. 349 (W.D. Wash. 1992)...................................................................9

*Linzer Prods. Corp. v. Sekar,*
    499 F. Supp. 2d 540 (S.D.N.Y. 2007)...................................................................7

*Maverick Recording Co. v. Chowdhury,*
    No. CV-07cv200 (DGT), 2008 U.S. Dist. LEXIS 63783 (E.D.N.Y. Aug. 19, 2008) ..............14

*Nynex Corp. v. Discon,*
    525 U.S. 128 (1998).............................................................................................6

*Ogbon v. Beneficial Credit Servs., Inc.,*
    No. 10 CV 03760, 2011 U.S. Dist. LEXIS 74620 (S.D.N.Y. July 8, 2011).............................17

*Orth-O-Vision, Inc. v. Home Box Office,*
    474 F. Supp. 672 (S.D.N.Y. 1979).......................................................................12

*Rock River Communs., Inc. v. Universal Music Group, Inc.,*
    2011 U.S. Dist. LEXIS 46023 .............................................................................9

*Rock TV Ent, Inc. v. Time Warner, Inc.,*
    No. 97 Civ. 0161 (LMM), 1998 U.S. Dist. LEXIS 799 (S.D.N.Y. Jan. 30, 1998)...................10

*Rothstein v. GMAC Mortg, LLC,*
    No. 12 Civ. 3412 (AJN), 2013 U.S. Dist. LEXIS 141034 (S.D.N.Y. Sept. 30, 2013)
    (Alison, J.)............................................................................................................6

*Russell v. Price,*
    612 F.2d 1123 (9th Cir. 1979) ............................................................................14

*Sudler v. City of New York,*
    No. 08 Civ. 11389, 2009 U.S. Dist. LEXIS 67138 (S.D.N.Y. July 31, 2009)................................16

*Theatre Party Assocs. Inc. v. Shubert Org., Inc.,*
    695 F. Supp. 150 (S.D.N.Y. 1988).....................................................................9, 10

*Theee Movies of Tarzana v. Pacific Theatres, Inc.,*
    828 F.2d 1395 (9th Cir. 1987) ..............................................................................6

*Todd v. Exxon Corp.*,
   275 F.3d 191 (2d Cir. 2001)......................................................................8

*Tops Mkts., Inc. v. Quality Mkts., Inc.*,
   142 F.3d 90 (2d Cir. 1998)........................................................................7

*TufAmerica, Inc. v. Diamond*,
   No. 12 Civ. 3529 (AJN), 2013 U.S. Dist. LEXIS 129128 (S.D.N.Y. Sept. 10, 2013)
   (Alison, J.)..............................................................................................6

*United Magazine Co. v. Murdoch Magazines Distrib.*,
   146 F. Supp. 2d 385 (S.D.N.Y. 2001).................................................7, 8

*Viva Optique, Inc. v. Contour Optik, Inc.*,
   No. 03 Civ. 8948 (LTS)(AJP), 2007 U.S. Dist. LEXIS 91421 (S.D.N.Y. Dec. 6,
   2007) ................................................................................................13, 14

*Wellnx Life Scis., Inc. v. Iovate Health Scis. Research, Inc.*,
   516 F. Supp. 2d 270 (S.D.N.Y. 2007)....................................................10

**Statutes**

15 U.S.C. § 1 .................................................................................................6

**Other Authorities**

I-2A P. E. Areeda & H. Hovenkamp, *Antitrust Law: An Analysis Of Antitrust
   Principles And Their Application*, ¶ 202a (2012) ....................................11

**Rules**

Rule 12(b)(6).................................................................................................8, 18

## PRELIMINARY STATEMENT

In its Complaint alleging various forms of interference with a film distribution contract, Plaintiff Ace Arts, LLC ("Ace") goes to great lengths to avoid disclosing the actual facts underlying its allegations. When Ace's allegations are read in connection with the documents referenced in and attached to the Complaint, and others of which may be judicially noticed, it is plain that each of Ace's causes of action fail.

As set forth in SATV's concurrently filed Motion to Stay, the dispute at issue in this case actually stems from a different dispute currently being litigated in London (the "UK Action"). The UK Action was filed in May 2012 by Sony/ATV ("SATV") against Iambic Media and WPML (the "UK Producers"), the producers of a documentary about The Beatles' first concert in the United States (the "Documentary"). The Documentary includes The Beatles' performance of certain compositions by John Lennon and Paul McCartney owned by SATV (the "Compositions").[1]

The UK Action alleges that United States copyright law mandates that the UK Producers cannot legally use The Beatles' performance of the Compositions in the Documentary without a "synchronization license" from SATV. An injunction order upon consent (the "Injunction Order") was entered in the UK Action explicitly prohibiting the UK Producers from exploiting portions of the Documentary featuring the Compositions. Although Ace, the distributor of the Documentary, is not a party to that litigation, the UK Producers and Ace are related companies with common ownership and a common principal—Christopher Hunt ("Hunt"). The Injunction Order was signed by Hunt, on behalf of the UK Producers, and explicitly bars the UK Producers

---

[1] The SATV-owned compositions used in the Documentary are: *She Loves You*, *All My Loving*, *I Wanna Hold Your Hand*, *This Boy*, *From Me to You*, *I Saw Her Standing There*, and *I Wanna Be Your Man*. SATV also owns 66.66% of the U.S. copyrights in *Twist & Shout*, written by Berns and Medley and performed by The Beatles.

from "tak[ing] any step to or authoriz[ing] any other entity, including but not limited to Ace Arts LLC ('Ace'), to take any step to exploit the [Documentary]." (Complaint, Ex. F).

In spite of the Injunction Order, on or about October 11, 2013, Ace, at Hunt's behest, commenced this action (the "NY Action") alleging that SATV and co-defendant Apple Corps Limited ("Apple") (collectively the "Defendants") conspired to prevent the exhibition of the Documentary in the U.S. by (a) filing the UK Action, and (b) informing Ace's distributor, Screenvision Exhibition Inc. ("Screenvision"), of the UK Action, the Injunction Order and SATV's rights underlying each.[2]  Based upon these actions, Ace claims a violation of Section 1 of the Sherman Act and various state law causes of action grounded in tortious interference.  As set forth in detail below, as well as in SATV's Motion to Dismiss or Stay ("SATV's Motion"), each is fundamentally deficient, and must be dismissed, as a matter of law.

**FACTUAL BACKGROUND**

### A.      The Complaint In This Action

In its Complaint, Ace alleges that it has the right to distribute the Documentary.  Ace admits that its distribution rights derive from the UK Producers, two privately held United Kingdom limited corporations, both of which are owned by Hunt, an individual who resides in the United Kingdom.  (Request for Judicial Notice ("RJN"), Ex. D; *id*., Ex. E at ¶ 5).  Hunt is also an owner of Ace.  (RJN, Ex. A).

It is undisputed that the Documentary contains The Beatles' recorded performance of the Compositions owned by SATV.  (Complaint ¶¶ 13, 20, 49, 50, 55, 85; RJN Ex. J).  In its Complaint, Ace alleges that on April 21, 2010, SATV supposedly agreed to grant the UK Producers a synchronization license to use the Compositions in the Documentary in exchange for

---

[2] Ace previously filed a nearly identical lawsuit in the Central District of California, in which it failed to even mention the UK Action or Injunction Order.  Ace dismissed the case upon Defendants' threat of Rule 11 Sanctions. (RJN, Ex. B).

some unspecified amount of royalties from the exhibition of the Documentary.  (Complaint ¶ 55).  However, no license ever issued, and the UK Producers themselves admit in the prior-pending UK Action that no such license exists.  (RJN, Ex. D at 4, ¶ 13.4; *id.*, Ex. E at ¶ 5).

Ace's Complaint also claims that the ***Videotape*** is in the public domain because it purportedly had been transferred on a few occasions without copyright notice.  This is a red herring.  Ace ignores copyright law by conflating the ***Videotape*** and the ***Compositions***, which legally are two separate and distinct works, each imbued with its own set of rights.  Whether or not the ***Videotape*** fell into the public domain (which need not be resolved on this motion to dismiss) has no impact on the copyright status of SATV's underlying ***Compositions***.  Regarding the ***Compositions***, Ace alleges, at most, that SATV never proved to Ace that it owns copyrights in the Compositions.  (Complaint ¶ 86).  Ace does not and cannot allege, however, that SATV does not own such rights.  (RJN, Ex. J).

Ace alleges that it entered into a distribution agreement with Screenvision, under which it granted Screenvision a license to exhibit the Documentary at approximately 500 theaters across the U.S., with the first exhibition scheduled to take place on May 6, 2012 at the Ziegfeld Theater in New York.  (Complaint ¶¶ 4, 79).  According to Ace, "[a]t the time of the planned exhibition, Screenvision believed it could, and was seeking, to add another 500 theaters to the exhibition schedule and to extend the initial run of showings from 2 days to 2 weeks."  (*Id.* at ¶ 4).  Ace further alleges that "[t]he publicity of the scheduled screenings alone elicited interest in the licensing of the Documentary by two [unidentified] American television networks as [unidentified] major national and [unidentified] international media and Internet coverage."  (*Id.* at ¶ 5).

As discussed in greater detail below, in May 2012, SATV commenced the UK Action seeking interim injunctive relief preventing the UK Producers from exploiting the Documentary because they had no synchronization license to use The Beatles' performance of the Compositions.  Ace alleges that the UK Action was "baseless," and was commenced by SATV as part of its conspiracy with Apple to cause Screenvision and the Ziegfeld Theater to back out of their distribution agreements with Ace.  (Complaint ¶ 6).  Ace alleges no facts to support its conclusory claim that Apple Corps, which was not a party to the UK Action, had any role in SATV's decision to commence the action to protect its copyrights in the Compositions.

Further, Ace alleges that SATV interfered with its relationship with Screenvision by communicating SATV's concerns over Ace's right to exhibit the Documentary, but Ace fails to allege any facts regarding the actual content of those communications.  (Complaint ¶ 6).  When the actual content of such communications is analyzed, as it may be upon request for judicial notice, it is plain that SATV merely informed Screenvision of the UK Action, the Injunction Order, and their assertion of rights under each.  (RJN, Ex. H).

### B.  The United Kingdom Action

In the UK Action, SATV and Sony/ATV (UK) sued the UK Producers, the entities from which Ace admits it derives its right to distribute the Documentary.  (Complaint, Ex. G).  The UK Action was commenced to prevent the UK Producers from releasing, authorizing, or permitting the release of the Documentary in theaters pursuant to the Screenvision distribution agreement or otherwise, because doing so would violate SATV's valuable rights in the Compositions.  (*Id*.).

As is clear by SATV's Statement of Claims, the facts and issues presented in the UK Action mirror those raised by Ace in the NY Action.  (*Id*.).  Indeed, Ace's allegations focus

almost exclusively on actions purportedly taken by the UK Producers, not Ace, in the U.K., not the U.S.

The UK Action remains pending and an Injunction Order *on consent* was issued by the U.K. Court in which Hunt, on behalf of the UK Producers, agreed that "until the trial of this action or further order in the meantime," they:

> "[W]ill not (whether by its directors, officers, employees or agents or howsoever otherwise [e.g., Hunt]) take any step to or authorize any other entity, *including but not limited to Ace Arts LLC ('Ace')*, to take any step to exploit the documentary film 'The Beatles: The Lost Concert' (the 'Documentary') featuring any or any substantial part of any of the musical compositions set out in the Schedule to this Consent Order *whether through theatrical exhibition in the USA pursuant to Ace's agreement with Screenvision, Exhibition Inc ('Screenvision') or otherwise howsoever*."

(Complaint, Ex. F (emphasis added)).

Hunt's voluntary agreement to the Injunction Order negates Ace's allegations that SATV and/or Apple prevented it from exhibiting the Documentary in the United States.  Indeed, it was Hunt—through whom Ace derived its alleged right to show the Documentary—who voluntarily agreed not to directly or indirectly, through Ace, exhibit the Documentary.  (*Id*.).

<u>**ARGUMENT**</u>

**I.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM**

**A.   <u>The Legal Standard</u>**

To survive a motion to dismiss, the factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 540 U.S. 554, 555 (2007).  While allegations are taken as true, "conclusions of law or unwarranted deductions of fact are not admitted."  *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994). "A complaint containing nothing more than 'a formulaic recitation of the elements of a cause of

action' is insufficient, and the Court need not assume the truth of mere conclusory statements."
*Rothstein v. GMAC Mortg, LLC*, No. 12 Civ. 3412 (AJN), 2013 U.S. Dist. LEXIS 141034, at *4
(S.D.N.Y. Sept. 30, 2013) (Alison, J.).

"In addition to the allegations of the pleading itself, the Court may consider documents
attached as exhibits or incorporated by reference." *TufAmerica, Inc. v. Diamond*, No. 12 Civ.
3529 (AJN), 2013 U.S. Dist. LEXIS 129128, at *2-3 (S.D.N.Y. Sept. 10, 2013) (Alison, J.). "If
a document relied on in the complaint contradicts allegations in the complaint, the document, not
the allegations, control, and the court need not accept the allegations in the complaint as true."
*Id*. The Court may also consider facts properly subject to judicial notice. *See Chambers v. Time
Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Accordingly, in deciding this Motion, the Court
may consider each of the Exhibits appended to the Complaint, as well as those referenced in
Defendants' concurrently filed Request for Judicial Notice.

### B.    Ace Fails To State A Claim Under The Sherman Act

Section 1 of the Sherman Act provides a cause of action for conspiracy in restraint of
trade. 15 U.S.C. § 1 ("Section 1"). "Despite its broad language, the Sherman Act prohibits only
contracts or agreements that '*unreasonably* restrain trade.'" *Flash Elecs. v. Universal Music*,
312 F. Supp. 2d 379, 385 (E.D.N.Y. 2004). Accordingly, under the so-called "rule of reason,"[3]
the Court examines various factors in deciding whether the particular restraint of trade
*unreasonably* restricts competition, considering both the pro-competitive and anti-competitive

---

[3] While Plaintiff asserts (without any basis or factual support) that this case is one of the limited category of cases
subject to the *per se* rule, it is wrong as a matter of law. The Supreme Court has made clear that "antitrust law does
not permit the application of the *per se* rule in the boycott context in the absence of a horizontal agreement." *Nynex
Corp. v. Discon*, 525 U.S. 128, 138 (1998). Ace does not and cannot allege that Apple and Sony/ATV are
competitors in the alleged market (*i.e.*, parties to a horizontal agreement). (*See, e.g.*, Complaint ¶ 59). As Plaintiff
acknowledges, Sony ATV is the supplier of certain synch rights licensed by Apple. Such an arrangement is vertical,
by definition, and Ace's claims are, at best, subject to the rule of reason. *See, e.g.*, *Theee Movies of Tarzana v.
Pacific Theatres, Inc.*, 828 F.2d 1395, 1398 (9th Cir. 1987) ("Clearances are vertical non-price restraints of trade.");
*Linzer Prods. Corp. v. Sekar*, 499 F. Supp. 2d 540, 554 (S.D.N.Y. 2007) ("Vertical exclusive dealing arrangements
such as section 14.4 of the Agreement are presumptively lawful").

effects of the restraint. *Ark. Carpenters Health & Welfare Fund v. Bayer AG*, 604 F.3d 98, 104 (2d Cir. 2010). Before the Court may even reach that analysis, however, a plaintiff is required to allege both the delineation of a plausible "relevant market" (the area in which competition is restrained) and that the challenged restraint had an actual adverse effect on competition as a whole, rather than on just a competitor, in that relevant market. *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 96 (2d Cir. 1998). Ace fails to adequately allege either.

### 1. Ace Fails To Plead A Relevant Market With Reference To Interchangeability And Cross-Elasticity Of Demand

In order to state a claim under Section 1, Ace must allege a properly defined relevant product market, which **requires** reference to the fundamental antitrust concepts of "interchangeability" and "cross-elasticity of demand." *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 238 (2d Cir. 2008). "[W]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." *Id.*; *see also United Magazine Co. v. Murdoch Magazines Distrib.*, 146 F. Supp. 2d 385, 398 (S.D.N.Y. 2001) ("A plaintiff's failure to define its market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal.").

Here, Ace's complaint is devoid of **any** factual allegations regarding delineation of the market, let alone allegations that "define the market according to the rules of 'interchangeability' and 'cross-elasticity'" or "offer a theoretically rational explanation for why the boundaries of the market are defined as they are." *Bayer Schering Pharma AG v. Sandoz, Inc.*, 813 F. Supp. 2d 569, 575-576 (S.D.N.Y. 2011) (internal citations omitted). Rather, Plaintiff's **only** allegation

regarding the relevant market is the conclusory assertion "that the relevant market is Beatles-related historical audio-visual media."  (Complaint ¶ 95).  This single allegation is insufficient and alone mandates dismissal.  *See Emigra Group, LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp. 2d 330, 359 (S.D.N.Y. 2009) ("[I]t is not enough to survive even a Rule 12(b)(6) motion to dismiss to make bald assertions as to [a relevant market's] existence or definition.").

### 2.   *Ace's Market Fails As An Impermissible Single-Product Market*

Even had Ace pleaded with reference to the required antitrust concepts, its market definition would still necessarily fail as an impermissible single-product market.  *See Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001) ("Cases in which dismissal on the pleadings is appropriate frequently involve . . . failed attempts to limit a product market to a single brand, franchise, institution, or comparable entity that competes with potential substitutes . . . .").

As a matter of law, an artificially narrow market consisting of a single product cannot constitute a "relevant market."  *See Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, 713 F. Supp. 2d 286, 298 (S.D.N.Y. 2010) ("Courts in this district have consistently held that single brand name product cannot define a relevant market"); *United Magazine Co.*, 146 F. Supp. 2d at 398 ("Courts in this District have rejected the proposition that allegedly unique products, by virtue of customer preference for that product, are markets unto themselves.").  In *Flash Elecs.*, for instance, plaintiff alleged that each Universal video title, or Universal videos as a whole, constituted a relevant product market.  312 F. Supp. 2d at 391.  Similar to Ace here, plaintiff argued in support of the proposed market that "if consumers wanted to see 'Jaws' (a Universal movie) on video, they would not be content to rent 'Piranha' (not a Universal movie) instead simply because they are both movies about killer fish."  *Id*.  As the court aptly noted, "[t]his is exactly the sort of argument courts have routinely rejected in the past.  Although a particular

customer may have his heart set on renting 'Jaws,' it is highly likely that, if it is unavailable, he will select a different title, perhaps one that does not even involve killer fish at all." *Id*. Accordingly, the court held that neither market was legally sufficient. *Id*.

Courts have frequently applied this rule to both music and other performing arts. *See, e.g.*, *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 265 (S.D.N.Y. 2000) (dismissal appropriate where no allegations "why products associated with other Broadway shows or other forms of entertainment are not reasonably interchangeable with products associated with Cats."); *Theatre Party Assocs. Inc. v. Shubert Org., Inc.*, 695 F. Supp. 150, 154-55 (S.D.N.Y. 1988) (no plausible explanation "why other forms of entertainment, namely other Broadway shows … are not adequate substitute products [for 'Phantom of the Opera']."); *Joplin Enterprises v. Allen*, 795 F. Supp. 349, 353 (W.D. Wash. 1992) (market for "artistic works about Janis Joplin" insufficient as a matter of law; "defendants cannot rationally explain why their market does not include live performances of dramatic plays or concerts, other depictions of the lives of female rock and blues vocalists, or movies and plays about historically significant musicians of the sixties."); *Rock River Communs., Inc. v. Universal Music Group, Inc.,* 2011 U.S. Dist. LEXIS 46023, 47 ("defining the market as consisting of Bob Marley sound recordings is too narrow to be relevant for antitrust purposes."). (*See also* RJN, Ex. G).

Here, Ace alleges an even more narrow relevant market than the single brand or single musician markets—a small subset of a single form of media about a single band, namely "Beatles-related historical audio-visual media." As in *Theatre Party Associates*, Ace impermissibly "appears to have narrowly defined the market in an attempt to conform the alleged market to the facts of the present case." 695 F. Supp. at 154. Ace does not, and cannot, allege why other documentaries or films about other bands are not reasonable substitutes for the

products alleged in its purported market.  While The Beatles are obviously a unique and

extraordinary group of performers, they are nevertheless one of countless bands about whom

there are a countless numbers of films.  *See Global Discount Travel Servs., LLC v. TWA*, 960 F.

Supp. 701, 705 (S.D.N.Y. 1997) ("A consumer might choose to purchase a certain product

because the manufacturer has spent time and energy differentiating his or her creation from the

panoply of products in the market, but at base, Pepsi is one of many sodas, and NBC is just

another television network.").  Accordingly, Ace's proposed market is impermissibly narrow,

and fails as a matter of law.

### 3.   Ace Alleges No Injury To Market, Only Injury To Ace

"Because the antitrust laws protect competition as a whole, evidence that plaintiffs have

been harmed as individual competitors will not suffice.  It is axiomatic that [t]he antitrust

laws . . . were enacted for the protection of competition, not competitors."  *Wellnx Life Scis., Inc.*

*v. Iovate Health Scis. Research, Inc.*, 516 F. Supp. 2d 270, 289 (S.D.N.Y. 2007) (internal

citations and quotation marks omitted).  Accordingly, "in order to adequately allege antitrust

injury, 'plaintiffs must demonstrate that defendants' conduct was intended to or did have some

anticompetitive effect ***beyond their own loss of business or the market's loss of a competitor*.'"

*Rock TV Ent, Inc. v. Time Warner, Inc.*, No. 97 Civ. 0161 (LMM), 1998 U.S. Dist. LEXIS 799,

at *10 (S.D.N.Y. Jan. 30, 1998) (emphasis in original); *see also E & L Consulting, Ltd. v. Doman*

*Indus.*, 472 F.3d 23, 29 (2d Cir. 2006) ("It is not a violation of the antitrust laws, without a

showing of actual adverse effect on competition market-wide….") (internal citations omitted).

Here, even assuming that there was a legitimate market for "Beatles-related historical

audio-visual media," which as set forth above there cannot be, Ace does not and cannot allege an

injury to that market, as a whole.  Rather, Ace's sole allegation regarding market harm is that a

single film (by the related UK Producers), in its current form, was eliminated.  (Complaint, ¶¶ 90,

91).  The lack of any allegation of harm to competition generally in the purported market is fatal to Ace's Section 1 claim.  *See, e.g.*, *Carell*, 104 F. Supp. 2d at 267 (motion to dismiss mandated where "plaintiff has only alleged harm to plaintiff, not the market, and … plaintiff sets forth no facts upon which a court could find competition-reducing antitrust injury."); *Rock TV Ent., Inc.*, 1998 U.S. Dist. LEXIS 799 at *10 ("Rock TV has not set forth facts demonstrating injury to the rock video programming market, but rather has alleged its own loss of business and the market's loss of a competitor. Therefore, Rock TV has not adequately alleged antitrust injury."). Accordingly, Ace's antitrust cause of action must independently be dismissed for this reason.

### 4.   *Even Were Ace's Claim Otherwise Sufficient, Defendants' Alleged Actions Were Privileged By The Noerr-Pennington Doctrine*

#### (a)   Defendants' Purported Actions Are Privileged

The Noerr-Pennington doctrine generally excludes a party's governmental petitioning activity, including litigation activity, from antitrust scrutiny.  *See* I-2A P. E. Areeda & H. Hovenkamp, *Antitrust Law: An Analysis Of Antitrust Principles And Their Application*, ¶ 202a (2012) ("Litigation has a *Noerr* immunity that cannot be taken away, no matter what the claimant's motive, unless it is objectively baseless") (quotation marks omitted).  "Courts have extended Noerr-Pennington to encompass concerted efforts incident to litigation, such as prelitigation 'threat letters. . . .'" *Primetime 24 Joint Venture v. NBC*, 219 F.3d 92, 100 (2d Cir. 2000); *see also DirecTV*, *Inc. v. Lewis*, No. 03-CV-6241-CJS-JWF, 2005 U.S. Dist. LEXIS 8187, at *19 (W.D.N.Y. Apr. 29, 2005) (letters of lawyers, that "are nothing more than threats to enforce a right they already had—litigation in this Court," are covered by Noerr-Pennington).[4]

---

[4] Nor does the fact that the underlying litigation took place in the United Kingdom, rather than the United States, alter the analysis.  *See, e.g.*, *Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358, 1366 (5th Cir. 1983) ("petitioning immunity is not limited to the domestic political arena.").

Ace's antitrust cause of action is purportedly based upon three actions by SATV in conspiracy with Apple:

> (i) making false statements directly to Screenvision (and likely others) concerning Ace's legal right to exhibit the Documentary; (ii) making unjustified threats of legal action; and (iii) filing a baseless lawsuit in England against parties which were not parties to the exhibition contracts in the U.S. for the sole purpose of interfering with the planned distribution in the United States.

(Complaint ¶ 6). Each alleged act is a paradigmatic example of the types of actions immunized against antitrust scrutiny by Noerr-Pennington. *See, e.g.*, *Primetime 24 Joint Venture*, 219 F.3d at 100 ("[G]ood faith litigation to protect a valid copyright . . . falls within the protection of the Noerr-Pennington doctrine."); *Columbia Pictures Indus. v. Redd Horne*, 749 F.2d 154, 161 (3d Cir. 1984) ("[A] good faith attempt to enforce a copyright does not violate the antitrust laws."); *Edward B. Marks Music Corp. v. Colo. Magnetics, Inc.*, 497 F.2d 285, 290 (10th Cir. 1974) (ruling that a conspiracy to bring legal action to protect copyrights not actionable under Noerr-Pennington); *Orth-O-Vision, Inc. v. Home Box Office*, 474 F. Supp. 672, 687 (S.D.N.Y. 1979) ("HBO's good faith effort to enforce its copyrights cannot be said to contravene the antitrust laws.").

        (b)    Ace's "Sham Litigation" Allegations Are Insufficient

Acknowledging the incontrovertible application of Noerr-Pennington, Ace attempts to plead itself into the so-called "sham litigation" exception. However, Ace's conclusory allegation that SATV's litigation threats were somehow "sham" is insufficient. When the documents referenced in Ace's Complaint are examined, as they may be upon judicial notice, it is plain that each purported action was entirely proper and cannot be subject to the sham litigation exception.

The Supreme Court has defined "sham" litigation as requiring that the litigation (a) "[be] objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits"; and (b) subjectively, conceal "an attempt to interfere directly with the business

relationships of a competitor through the use [of] governmental process—as opposed to the outcome of that process—as an anticompetitive weapon."  *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993); *see also Ginx, Inc. v. Soho Alliance*, 720 F. Supp. 2d 342, 363 (S.D.N.Y. 2010) ("Only if a lawsuit is so utterly devoid of merit as to qualify as 'objectively baseless' does the filing party's subjective motive for commencing the action become relevant.").

Ace does not, and cannot, plead ***facts*** sufficiently alleging either objective baselessness or subjective anti-competitiveness.  *See De Beers LV Trademark Ltd. v. Debeers Diamond Syndicate Inc.*, No. 04 CIV. 4099 (DLC), 2005 U.S. Dist. LEXIS 9307, at *28 (S.D.N.Y. May 18, 2005) ("A 'reasonable belief that there is a chance that a claim may be held valid upon adjudication' provides an absolute defense precluding a finding of an antitrust violation."); *Viva Optique, Inc. v. Contour Optik, Inc.*, No. 03 Civ. 8948 (LTS)(AJP), 2007 U.S. Dist. LEXIS 91421, at *6 (S.D.N.Y. Dec. 6, 2007) (dismissal proper where facts alleged pertained only to subjective belief, and not objective baselessness).  Rather, an examination of the actual documents referenced, but not included, in the Complaint are examined, plainly reveals that as a matter of law any actions taken by SATV cannot be construed as "sham."

The UK Action itself cannot constitute a "sham" proceeding.  As set forth above, Ace does not and cannot dispute that SATV holds the rights to the Compositions used in the Documentary.  (RJN Ex. J).  Similarly, Ace cannot dispute that neither it, nor the UK Producers, had a synchronization license to use the Compositions in the Documentary.  (RJN, Ex. D at 4, ¶ 13.4; *id*., Ex. E at ¶ 5). While Ace asserts that the ***Videotape*** is in the public domain, this is a red herring, as copyright law is clear that the ***Videotape*** and the ***Compositions*** are two legally separate and distinct works, each imbued with its own set of copyright rights.  *Angel Music, Inc.*

*v. ABC Sports, Inc.*, 631 F. Supp. 429, 433 n.4 (S.D.N.Y. 1986) ("Synchronization rights . . . are a category of rights qualitatively distinct from the performance rights").  Whether or not the Videotape fell into the public domain has no impact on the copyright status of SATV's underlying **Compositions** (*i.e.*, publishing rights).  *See Russell v. Price*, 612 F.2d 1123, 1128 (9th Cir. 1979) ("although the derivative work may enter the public domain, the matter contained therein which derives from a work still covered by statutory copyright is not dedicated to the public.").

Given the existence of a valid copyright, it is plain that SATV had a valid basis to bring the UK Action.  *See, e.g.*, *Elektra Entm't Group, Inc. v. Schwartz*, No. CV-06-3533 (DGT), 2008 U.S. Dist. LEXIS 26183, at *9 (E.D.N.Y. Apr. 1, 2008) (denying motion to dismiss where Complaint alleged the names of the copyrighted recordings that were allegedly infringed and describes the manner in which they were infringed); *Maverick Recording Co. v. Chowdhury*, No. CV-07cv200 (DGT), 2008 U.S. Dist. LEXIS 63783, at *9 (E.D.N.Y. Aug. 19, 2008) (finding no sham, on a motion to dismiss, where "plaintiffs' allegations in these cases establish a plausible claim of copyright infringement"); *Viva Optique, Inc.*, 2007 U.S. Dist. LEXIS 91421, at *7 ("Generalized allegation that Defendants subjectively believed that their patents were actually invalid or not infringed is insufficient to sustain a plausible claim that Defendants' suits are objectively meritless").

Similarly, Ace's vague allegation of "unjustified threats of litigation" interfering with its relationship with Screenvision is insufficient to overcome <u>Noerr</u> immunity.  When the actual correspondence with Screenvision is examined, it is plain that SATV was merely informing Screenvision of the UK Action, the Injunction Order, and its rights thereunder.  (RJN, Ex. H).

The absurdity of Ace's "sham" allegation is particularly apparent in light of the existing Injunction Order, which was signed by Hunt, a joint principal of the UK Producers and Ace, and prohibits the UK Producers from doing anything, ***including anything through Ace***, to exploit the Documentary.  (*See* RJN, Ex. A (establishing Chris Hunt is a principal of Ace)).  Because SATV actually obtained a binding judicial order pertaining to restrictions on distribution of the Documentary, SATV's letters to Screenvision or others in the distribution chain, making them aware of the UK Action, the Injunction Order, or its assertion of rights under the two, simply cannot be "sham."  *See Chen v. New Trend Apparel, Inc.*, No. 11 Civ. 324 (GBD), 2012 U.S. Dist. LEXIS 168417, at \*39-42 (S.D.N.Y. July 25, 2012) (taking judicial notice of prior holdings in connection with motions to vacate, and holding that they "plainly are inconsistent with the general assertion that the application was a sham.").  Ace's antitrust cause of action, therefore, must also be dismissed for this reason.

### C.   Ace's Declaratory Relief Action Cannot Lie Against Apple[5]

As noted in SATV's Motion, Ace's claim for a declaratory judgment of non-infringement should be dismissed as duplicative of the claims and defenses in the UK Action.  Importantly, Ace's declaratory relief cause of action is not directed towards Apple because Ace's declaratory relief action seeks a declaration ***solely*** pertaining to the rights of SATV in the Compositions.  Moreover, in any event as to Apple, Ace fails to plead facts sufficient to state a claim for declaratory relief.  Ace's "complaint's entirely conclusory allegations of [a] conspiracy . . . amount to nothing more than bald allegations that all defendants conspired among themselves, which do not suffice under Twombly."  *Sudler v. City of New York*, No. 08 Civ. 11389, 2009 U.S. Dist. LEXIS 67138, at \*3

---

[5] Apple joins in arguments presented in SATV's Motion to Dismiss or Stay Ace's declaratory relief action, and incorporates them as if fully set forth herein.

(S.D.N.Y. July 31, 2009).  Accordingly, Ace's declaratory relief claim must be dismissed in any case as to Apple.

    **D.**    **Ace Fails to State a Claim Against Apple for Tortious Interference with Contract, Tortious Interference with Prospective Economic Relations, and Unfair Competition under N.Y. Common Law[6]**

Ace's tortious interference claims and unfair competition cause of action must be dismissed for a number of reasons.  As detailed in SATV's Motion, Ace has failed to allege facts sufficient to support all requisite elements of each cause of action.  With regard to Ace's tortious interference with contract claim, Ace failed to allege a breach and failed to allege that SATV's conduct was improper.  Ace's tortious interference with prospective economic relations claim is also deficient and must be dismissed because, with respect to Screenvision, Ace is impermissibly attempting to re-characterize its tortious interference with contract claim into a claim for tortious interference with economic relations.  Ace also does not allege any facts sufficient to even suggest that SATV interfered with Ace's relationships with "other U.S. movie theater chains, two American television networks, and two DVD labels" or that SATV engaged in physical violence, fraud or misrepresentation, that it threatened frivolous civil or criminal litigation against Screenvision, or exercised extreme or unfair economic pressure.  Additionally, Ace's unfair competition claim should also be dismissed because Ace has pleaded no facts showing palming off or misappropriation of its property, labor, or expenditures.

Moreover, Ace has not directed any of these causes of action at Apple because Ace alleges no facts related to Apple's conduct sufficient to state a claim against Apple for any type of tortious interference or for unfair competition.  Ace can only attempt to rely on its inadequate assertions of a conspiracy between Apple and SATV to support its allegations of tortious

---

[6] Apple joins in arguments presented in SATV's Motion to Dismiss or Stay Ace's tortious interference with contract, interference with prospective economic relations, and unfair competition claims, and incorporates them as if fully set forth herein.

interference and unfair competition against Apple[7], however "a claim . . . is not actionable where the underlying independent tort has not been adequately pleaded."  *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10 CV 03760, 2011 U.S. Dist. LEXIS 74620, at *7-8 (S.D.N.Y. July 8, 2011) (finding that no new factual allegations cured defects with complaint alleging tortious conduct, so new civil conspiracy cause of action must be dismissed because "[t]he essence of the cause of action for civil conspiracy is the tortious conduct of the defendants; therefore the dismissal of the underlying substantive cause of action also requires the dismissal of the accompanying charges of conspiracy based on the same facts or allegations.").  Therefore, Ace's tortious interference with contract, interference with prospective economic relations, and unfair competition claims against Apple should be dismissed.

---

[7] Indeed, Ace generally alleges that "Defendants [were] motivated by their desire to preclude any competition to Apple Corps' film on iTunes" and that their actions were "[i]n conspiracy with and at the insistence of Apple Corps . . ." in support of its tortious interference with contract, interference with prospective economic relations, and unfair competition claims.  (Complaint ¶¶ 119, 123, 132, 134, 143, and 144).  These conspiracy allegations are insufficient under *Twombly*, and also cannot serve as support for any of Ace's other causes of action.  *See Bejjani v. Manhattan Sheraton Corp.*, No. 12 Civ. 6618 (JPO), 2013 U.S. Dist. LEXIS 90467, at *38 (S.D.N.Y. June 27, 2013) (finding that since *Twombly*, "courts have emphasized the importance of pleading sufficient subsidiary facts when alleging the existence of a conspiracy.").

## <u>CONCLUSION</u>

For the foregoing reasons, it is respectfully submitted that Defendants' motion should be granted and the above referenced causes of action be dismissed with prejudice for failure to state a claim under Rule 12(b)(6).

Dated: December 9, 2013     Respectfully submitted,

         */s/ Paul V. LiCalsi* _____
         Paul V. LiCalsi (PL6622)
         Shane St. Hill (SS1361)
         ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
         601 Lexington Avenue, Suite 3400
         New York, New York 10022
         T: (212) 980-7400
         F: (212) 980-7499
         pvlicalsi@rkmc.com
         ssthill@rkmc.com

         *Attorneys for Defendant Apple Corps Limited*