Donald S. Zakarin
dzakarin@pryorcashman.com
Lisa M. Buckley
lbuckley@pryorcashman.com
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036-6569

*Attorneys for Defendant Sony/ATV Music Publishing LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
                                 :

ACE ARTS, LLC,                     :
                                 :

                Plaintiff,       :        13 CIV 7307

                                 :

     -against-                 :
                                 :

SONY/ATV MUSIC PUBLISHING, LLC and  :
APPLE CORPS LIMITED,                                 :

                Defendants.   :

---------------------------------------------------------X

**DEFENDANT SONY/ATV MUSIC PUBLISHING LLC'S MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO EITHER DISMISS OR STAY THE COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

FACTS ........................................................................................................................ 3

    A.  The United Kingdom Action ................................................................ 4

    B.  The Complaint In This Action .............................................................. 5

ARGUMENT .............................................................................................................. 6

I.    THE COMPLAINT SHOULD BE DISMISSED OR STAYED
    PENDING THE RESOLUTION OF THE FIRST-FILED U.K. ACTION ..................... 6

    A.  The Parties and the Issues Are Substantially Similar
        So As to Require a Dismissal or Stay This Action ................................ 8

    B.  The Interests of Judicial Economy Require
        A Dismissal or Stay of the New York Action ...................................... 9

    C.  The U.K. Action Offers Ace Complete and Adequate Relief ............... 10

    D.  General Considerations of Fairness Require a Dismissal or Stay of this Action ...... 10

II    THE COMPLAINT SHOULD BE
    DISMISSED FOR FAILURE TO STATE A CLAIM ................................................. 11

    A.  The Legal Standard ............................................................................. 11

    B.  Ace Fails to State a Claim Under The Sherman Act ............................ 12

        (i)    Ace's Claim Must Be Dismissed, Because It
               Failed To Plead A Relevant Market With Reference
               To Interchangeability And Cross-Elasticity Of Demand ........... 12

        (ii)   Defendants' Actions Were Privileged
               By The Noerr Pennington Doctrine ........................................ 14

    C.  Ace Fails to State a Claim for Tortious Interference with Contract ...... 15

        i.    Ace Fails to Allege a Breach ............................................... 16

        ii.   Ace Fails to Allege the Requisite "But For" Causation ......... 17

**TABLE OF CONTENTS,** *Continued*

iii. Ace Fails to Allege that SATV's Conduct Was Improper...................................18

D. Ace Fails to State a Claim for Tortious
Interference with Prospective Economic Relations ...................................................19

i. Ace Fails to State a Relationship "Not
Amounting to a Formal Contract" As To Screenvision.......................................20

ii. Ace Fails to Allege a Business Relationship With Any Other Entity.................21

iii. Ace Fails to Allege Malice or Dishonest, Unfair, or Improper Means...............21

iv. Ace Fails to Allege Injury....................................................................................22

E. Ace Fails to State a Claim for Unfair Competition under N.Y. Common Law........23

F. Ace Fails to State a Claim for Violation of N.Y. GBL § 349...................................24

CONCLUSION......................................................................................................................25

## TABLE OF AUTHORITIES

<u>**CASES**</u>                                                                            <u>**PAGE(s)**</u>

Advantage Int'l Mgmt. v. Martinez,
    No. 93 Civ. 6227 (MBM), 1994 U.S. Dist. LEXIS 12535 (S.D.N.Y. Sept. 2, 1994)......8, 9

All R's Consulting, Inc. v. Pilgrims Pride Corp.,
    No. 06 Civ. 3601 (DAB), 2008 U.S. Dist. LEXIS 30626
    (S.D.N.Y. Mar. 28, 2008) ...............................................................................23, 24, 25

American Building Maintenance Co. v. ACME Prop. Services,
    515 F. Supp. 2d 298 (N.D.N.Y 2007)...............................................................................19

Antonious A. Alevizopoulos& Associates v. Comcast International Holdings, Inc.,
    100 F. Supp. 2d 178 (S.D.N.Y. 2000)...............................................................................15, 20

Argus Media, Ltd. v. Tradition Finance Services Inc.,
    No. 09 Civ. 7966 (HB), 2009 U.S. Dist. LEXIS 120866 (S.D.N.Y. Dec. 29, 2009).......6, 8

Astor Holdings, Inc. v. Roski,
    No. 01 Civ. 1905 (GEL), 2002 U.S. Dist. LEXIS 758 (S.D.N.Y. Jan. 15, 2002) .............15

Belfiore v. New York Times Co.,
    826 F.2d 177 (2d Cir. 1987).................................................................................................13

Bell Atlantic Corp. v. Twombly,
    540 U.S. 544 (2007).............................................................................................................11

CIBC Mellon Trust Co. v. Mora Hotel Corp. N.V.,
    100 N.Y.2d 215, 762 N.Y.S.2d 5 (2003) ...........................................................................10

Carell v. Shubert Organization,
    104 F. Supp. 2d 236 (S.D.N.Y. 2000).................................................................................13

Carvel Corp. v. Noonan,
    350 F.3d 6 (2d Cir. 2003)................................................................................................19, 22

Cerveceria Modelo, S.A. de C.V. v. USPA Accessories LLC,
    No. 07 Civ. 7998 (HB), 2008 U.S. Dist. LEXIS 28999
    (S.D.N.Y. Apr. 10, 2008).................................................................................16, 17, 18, 21

Chapman v. New York State Division for Youth,
    546 F.3d 230 (2d Cir. 2008)................................................................................................12

**CASES**                                                                                        **PAGE(s)**

Colliton v. Donnelly,
    399 Fed. Appx. 619 (2d Cir. 2010)....................................................................11

Columbia Pictures Industries v. Redd Horne,
    749 F.2d 154 (3d Cir. 1984)...........................................................................14

Continental Time Corp. v. Swiss Credit Bank,
    543 F. Supp. 408 (S.D.N.Y. 1982) ............................................................6, 7, 9

Credicom N.V. v. Colony Credicom,
    No. 99 Civ. 10486 (MBM), 2000 U.S. Dist. LEXIS 2916 (S.D.N.Y. Mar. 15, 2000) ......10

Cruz v. NYNEX Information Resource,
    263 A.D.2d 285, 703 N.Y.S.2d 103 (1st Dep't 2000) .....................................24

DirecTV, Inc. v. Lewis,
    No. 03-CV-6241-CJS-JWF, 2005 U.S. Dist. LEXIS 8187 (W.D.N.Y. Apr. 29, 2005) ....14

E & L Consulting, Ltd. v. Doman Industries,
    472 F.3d 23 (2d Cir. 2006)............................................................................14

E. R. Squibb & Sons, Inc. v. Cooper Laboratories, Inc.,
    536 F. Supp. 523 (S.D.N.Y. 1982) .............................................................23

Eaves v. Designs for Finance, Inc.,
    785 F. Supp. 2d 229 (S.D.N.Y. 2011)..........................................................24

Edward B. Marks Music Corp. v. Colorado Magnetics, Inc.,
    497 F.2d 285 (10th Cir. 1974) ....................................................................13

Emigra Group, LLC v. Fragomen, Del Rey, Bernsen & Loewy,LLP,
    612 F. Supp. 2d 330 (S.D.N.Y. 2009)..........................................................13

Enercomp, Inc. v. McCorhill Publishing Inc.,
    873 F.2d 536 (2d Cir. 1989).........................................................................16

Entertainment Partners Group, Inc. v. Davis,
    198 A.D.2d 63, 603 N.Y.S.2d 439 (1st Dep't 1993) .....................................22

Exxonmobil Inter-America, Inc. v. Advanced Information Engineering Services, Inc.,
    328 F. Supp. 2d 443 (S.D.N.Y. 2004).........................................................24

Fine v. Dudley D. Doernberg & Co.,
    203 A.D.2d 419, 610 N.Y.S.2d 566 (2d Dep't 1994) .....................................22

**CASES**                                                                 **PAGE(s)**

First Nationwide Bank v. Gelt Funding Corp.,
    27 F.3d 763 (2d Cir. 1994)...................................................................11

Flame S.A. v. Industrial Carriers,
    777 F. Supp. 2d 717 (S.D.N.Y. 2011)..................................................10

Flash Electronics v. Universal Music,
    312 F. Supp. 2d 379 (E.D.N.Y. 2004) ................................................12

G-I Holdings, Inc. v. Baron & Budd,
    179 F. Supp. 2d 233 (S.D.N.Y. 2001)...........................................17, 20

Gaidon v. Guardian Life Insurance Co. of America,
    94 N.Y.2d 330, 704 N.Y.S.2d 177 (1999) ..........................................24

Gianni Versace, S.P.A. v. Versace,
    No. 01 Civ. 9645 (PKL) (THK), 2003 U.S. Dist. LEXIS 2587
    (S.D.N.Y. Feb. 24, 2003)....................................................................20

Ginx, Inc. v. Soho Alliance,
    720 F. Supp. 2d 342 (S.D.N.Y. 2010)................................................15

Graham v. Barriger,
    699 F. Supp. 2d 612 (S.D.N.Y. 2009)................................................12

Grocery Haulers, Inc. v. C&S Wholesale Grocers, Inc.,
    No. 11 Civ. 3130 (DLC), 2011 U.S. Dist. LEXIS 103694 (S.D.N.Y. Sept. 12, 2011) .....18

Guard-Life Corp. v. S. Parker Hardware Manufacturing Corp.,
    50 N.Y.2d 183, 428 N.Y.S.2d 628 (1980) .........................................16

Hannex Corp. v. GMI, Inc.,
    140 F.3d 194 (2d Cir. 1998)................................................................19

Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC,
    808 F. Supp. 2d 552 (S.D.N.Y. 2011)................................................21

Hartford Fire Insurance Co. v. California,
    509 U.S. 764 (1993).............................................................................6

Henneberry v. Sumitomo Corp. of America,
    415 F. Supp. 2d 423 (S.D.N.Y. 2006)................................................19

**CASES**                                                                 **PAGE(s)**

Henneberry v. Sumitomo Corp. of America,
    532 F. Supp. 2d 523 (S.D.N.Y. 2007)...............................................................20

ITC Ltd. v. Punchgini, Inc.,
    9 N.Y.3d 467, 476, 850 N.Y.S.2d 366 (2007) .................................................23

Integrated System & Power, Inc. v. Honeywell International, Inc.,
    713 F. Supp. 2d 286 (S.D.N.Y. 2010).............................................................13

International Minerals & Resources, S.A. v. Pappas,
    96 F.3d 586 (2d Cir. 1996)...............................................................................18

Jews for Jesus, Inc. v. Jewish Community Relations Council, Inc.,
    968 F.2d 286 (2d Cir. 1992)........................................................................15, 18

Joplin Enterprises v. Allen,
    795 F. Supp. 349 (W.D. Wash. 1992)..............................................................13

Kahn v. Salomon Brothers, Inc.,
    813 F. Supp. 191 (E.D.N.Y. 1993) ..................................................................22

Kasada, Inc. v. Access Capital, Inc.,
    No. 01 Civ. 8893 (GBD), 2004 U.S. Dist. LEXIS 25257 (S.D.N.Y. Dec. 10, 2004)........21

Kirch v. Liberty Media Corp.,
    449 F.3d 388 (2d Cir. 2006).......................................................................15, 19

Kramer v. Pollock-Krasner Foundation,
    890 F. Supp. 250 (S.D.N.Y. 1995) ..............................................................20, 22

Kramer v. Time Warner, Inc.,
    937 F.2d 767 (2d Cir. 1991).............................................................................12

Landis v. North American Co.,
    299 U.S. 248 (1936)...........................................................................................6

Lennon v. Seaman,
    63 F. Supp. 2d 428 (S.D.N.Y. 1999)................................................................16

Lesavoy v. Lane,
    304 F. Supp. 2d 520 (S.D.N.Y. 2004), vac'd in part on other grounds, Lesavoy v.
    Gattullo-Wilson, 170 Fed. Appx. 721 (2d Cir. 2006)........................................9

**CASES**                                                                                              **PAGE(s)**

Linzer Products Corp. v. Sekar,
    499 F. Supp. 2d 540 (S.D.N.Y. 2007)..................................................................................12

Lions Gate Entertainment Corp. v. Icahn,
    No. 10 Civ. 08169 (HB), 2011 U.S. Dist. LEXIS 29832 (S.D.N.Y. Mar. 23, 2011) ........22

MLC (Bermuda) Ltd. v. Credit Suisse First Boston Corp.,
    46 F. Supp. 2d 249 (S.D.N.Y. 1999)...............................................................................8, 9

Masefield AG v. Colonial Oil Indus.,
    No. 05 Civ. 2231 (PKL), 2006 U.S. Dist. LEXIS 5792 (S.D.N.Y. Feb. 14, 2006)...........18

Mathias v. Daily News, L.P.,
    152 F. Supp. 2d 465 (S.D.N.Y. 2001).............................................................................13

Maurizio v. Goldsmith,
    230 F.3d 518 (2d Cir. 2000)............................................................................................24

Maverick Recording Co. v. Chowdhury,
    No. CV-07-640 (DGT), 2008 U.S. Dist. LEXIS 63783 (E.D.N.Y. Aug. 19, 2008)..........14

Medtech Products v. Ranir, LLC,
    596 F. Supp. 2d 778 (S.D.N.Y. 2008).............................................................................20

Millar v. Ojima,
    354 F. Supp. 2d 220 (E.D.N.Y. 2005) ............................................................................16

Minnesota Mining and Mfg. Co. v. Graham-Field, Inc.,
    No. 96 Civ. 3839 (MBM), 1997 U.S. Dist. LEXIS 4457 (S.D.N.Y. Apr. 8, 1997)...........21

NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.,
    87 N.Y.2d 614, 641 N.Y.S.2d 581 (1996) ......................................................................16

North Jersey Secretarial Sch., Inc. v. McKiernan,
    713 F. Supp. 577 (S.D.N.Y. 1989) .................................................................................14

Nynex Corp. v. Discon,
    525 U.S. 128 (1998)........................................................................................................12

One Hundred Pearl v. Vantage Secs.,
    No. 93 Civ. 7214 (PKL),1995 U.S. Dist. LEXIS 3193 (S.D.N.Y. Mar. 15, 1995) ...........19

Oparaji v. City of N.Y.,
    No. 97-14967, 1998 U.S. App. LEXIS 14967 (2d Cir. Apr. 21, 1998) .............................11

**CASES**                                                                     **PAGE(s)**

Orange County Choppers, Inc. v. Olaes Enterprises,
    497 F. Supp. 2d 541 (S.D.N.Y. 2007)..................................................................17

Orbit One Communications v. Numerex Corp.,
    692 F. Supp. 2d 373 (S.D.N.Y. 2010)..................................................................19

Orth-O-Vision, Inc. v. Home Box Office,
    474 F. Supp. 672 (S.D.N.Y. 1979) ......................................................................14

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,
    85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995) .............................................................24

P. Kaufmann, Inc. v. Americraft Fabrics, Inc.,
    232 F. Supp. 2d 220 (S.D.N.Y. 2002)............................................................16, 19

PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.,
    818 F.2d 266 (2d Cir. 1987)................................................................................19

Parklane Hosiery Co. v. Shore,
    439 U.S. 322 (1979)..............................................................................................9

Partners, L.P. v. Bear, Stearns & Co.,
    17 F. Supp. 2d 275 (S.D.N.Y. 1998)..................................................................17

Piccoli A/S v. Calvin Klein Jeanswear Co.,
    19 F. Supp. 2d 157 (S.D.N.Y. 1998)..................................................................20

Premium Mortg. Corp. v. Equifax Information Services, LLC,
    583 F.3d 103 (2d Cir. N.Y. 2009) ......................................................................23

Primetime 24 Joint Venture v. NBC,
    219 F.3d 92 (2d Cir. 2000).................................................................................14

Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,
    508 U.S. 49 (1993).............................................................................................15

Quanzhou Joerga Fashion Co. v. Brooks Fitch Apparel Grp., LLC,
    No. 10 Civ. 9078 (MHD), 2012 U.S. Dist. LEXIS 143334
    (S.D.N.Y. Sept. 28, 2012)..........................................................................6, 8, 9

Riddell Sports v. Brooks,
    872 F. Supp. 73 (S.D.N.Y. 1995) ......................................................................22

**CASES**                                                                                                    **PAGE(s)**

Risley v. Rubin,
     272 A.D.2d 198, 708 N.Y.S.2d 377 (1st Dep't 2000) .......................................................16

Robins v. Max Mara, U.S.A., Inc.,
     923 F. Supp. 460 (S.D.N.Y. 1996) ...................................................................................16

Rock River Communs., Inc. v. Universal Music Group, Inc.,
     No. CV08-635 CAS (AJWx), 2011 U.S. Dist. LEXIS 46023
     (C.D. Cal. Apr. 27, 2011)....................................................................................................13

Rock TV Entm't, Inc. v. Time Warner, Inc.,
     No. 97 Civ. 0161 (LMM), 1998 U.S. Dist. LEXIS 799 (S.D.N.Y. Jan. 30, 1998)......13, 14

Roy Export Co. Establishment v. CBS,
     672 F.2d 1095 (2d Cir. 1982)............................................................................................23

Royal & Sun Alliance Insurance Co. of Can. v. Century International Arms, Inc.,
     466 F.3d 88 (2d Cir. 2006).................................................................................................7

RSM Prod. Corp. v. Fridman,
     643 F. Supp. 2d 382 (S.D.N.Y. 2009),
     aff'd,  387 Fed. Appx. 72 (2d Cir. 2010) ..............................................................15, 20, 22

Scutti Enterprises v. Park Place Entertainment Corp.,
     322 F.3d 211 (2d Cir. 2003)...............................................................................................19

Sedona Corp. v. Ladenburg Thalmann & Co., Inc.,
     No. 03 Civ. 3120 (LTS) (THK),
     2005 U.S. Dist. LEXIS 16382 (S.D.N.Y. Aug. 8, 2005) ..................................................21

Semtek International Inc. v. Lockheed Martin Corp.,
     531 U.S. 497 (2001)..............................................................................................................9

Shapiro & Son Bedspread Corp. v. Royal Mills Associates,
     764 F.2d 69 (2d Cir. 1985).................................................................................................19

Sharma v. Skaarup Ship Management Corp.,
     916 F.2d 820 (2d Cir. 1990).................................................................................15, 17, 18

Shaw v. Rolex Watch, U.S.A., Inc.,
     673 F. Supp. 674 (S.D.N.Y. 1987) ...................................................................................13

**CASES**                                                                                    **PAGE(s)**

Smith & Johnson v. Hedaya Home Fashions,
    No. 96 Civ. 5821 (MBM), 1996 U.S. Dist. LEXIS 19023
    (S.D.N.Y. Dec. 24, 1996)................................................................................13

Spirit Locker, Inc. v. EVO Direct, LLC,
    696 F. Supp. 2d 296 (E.D.N.Y. 2010) ...........................................................24

Theatre Party Associates Inc. v. Shubert Organization, Inc.,
    695 F. Supp. 150 (S.D.N.Y. 1988) .................................................................13

Theee Movies of Tarzana v. Pacific Theatres, Inc.,
    828 F.2d 1395 (9th Cir. 1987) .......................................................................12

Tops Markets, Inc. v. Quality Markets, Inc.,
    142 F.3d 90 (2d Cir. 1998)............................................................................12

Treppel v. Biovail Corp.,
    No. 03 Civ. 3002 (PKL), 2005 U.S. Dist. LEXIS 2737 (S.D.N.Y.Feb. 22, 2005)...........21

Tropp v. Corp. of Lloyd's,
    385 Fed. Appx. 36 (2d Cir. 2010) .................................................................10

United Magazine Co. v. Murdoch Magazines Distributing,
    146 F. Supp. 2d 385 (S.D.N.Y. 2001), aff'd, 279 Fed. Appx. 14 (2d Cir. 2003) .............12

Vigoda v. DCA Products Plus Inc.,
    293 A.D.2d 265, 741 N.Y.S.2d 20 (1st Dep't 2002) .......................................23

Vinas v. Chubb Corp.,
    499 F. Supp. 2d 427 (S.D.N.Y. 2006)............................................................22

Volvo North America Corp. v. Men's International Professional Tennis Council,
    857 F.2d 55 (2d Cir. 1988)............................................................................23

World Wide Commc'ns, Inc. v. Rozar,
    No. 96 Civ. 1056 (MBM), 1997 U.S. Dist. LEXIS 20596 (S.D.N.Y. Dec. 29, 1997) ......15

**STATUTES**

Fed. R. Civ. P. 12(b)(6).................................................................... *passim*

N.Y. GBL § 349.................................................................................11, 24, 25

**<u>TREATISE</u>**                                                          **<u>PAGE(s)</u>**

I-2A P. E. Areeda & H. Hovenkamp, <u>Antitrust Law:  An Analysis Of Antitrust Principles
    And Their Application</u>, ¶ 202a (2012)...............................................................................14

David D. Siegel, 2001 Supp Practice Commentaries, McKinney's Cons Laws of NY,
    Book 7B, CPLR C5304:1, 2003 Pocket Part .................................................................10

Defendants Sony/ATV Music Publishing LLC ("SATV") and Sony/ATV Music Publishing (UK) Limited ("SATVUK", collectively referred to as "SATV") submit this Memorandum of Law in support of their motion to either dismiss or stay the complaint of Plaintiff, Ace Arts, LLC ("Ace").

## PRELIMINARY STATEMENT

This action should be dismissed or stayed first, because there is a prior pending copyright infringement action in the United Kingdom (the "UK Action") which will determine every issue in this case and second, because none of Ace's claims are legally viable. The gravamen of Ace's claims here are that defendants interfered with its supposed right to distribute the documentary film, *The Beatles: The Lost Concert* (the "Documentary") in the United States. However, as Ace fully knows, its distribution of the Documentary was lawfully enjoined pursuant to a temporary injunction (the "UK Injunction") issued by the Court in the UK Action, on consent of Ace's principal, Christopher Hunt, preventing the exhibition of the Documentary in the United States.

SATV is the original worldwide copyright owner of the classic catalogue of musical compositions written by John Lennon and Paul McCartney of The Beatles. SATVUK subpublishes such compositions in the United Kingdom. Co-defendant, Apple Corps, is owned by Paul McCartney, Ringo Starr and the estates of John Lennon and George Harrison and owns and controls the rights to use The Beatles' name(s) and likenesses. The UK Action was brought by SATV and SATVUK in May 2012 against Ace's purported licensors, Iambic Media, Ltd. ("Iambic") and WPMC Limited ("WPMC"), two United Kingdom companies also controlled by Hunt, a United Kingdom citizen.[1]  SATV and SATVUK brought the UK Action after discovering that Ace was about to begin distributing the Documentary in the United States,

---

[1] The fact that Ace is not suing Iambic and WPMC for licensing Ace rights they did not have to grant speaks volumes about Hunt's cynicism in bringing this case as an attempted end run around the UK Action.

despite never having obtained a license for the use of compositions owned by SATV and embodied in the Documentary.  The UK Injunction, to which Hunt consented on behalf of Iambic, WPMC, Ace and himself as a principal of all them, specifically states that it is applicable to Ace.

As alleged in the UK Action, the Documentary includes long-lost footage of The Beatles' first concert in the US in 1964 (the "Concert") – hence the name "Lost Concert" - in which they performed eight (8) copyrighted compositions (the "Compositions") exclusively owned by SATV (and subpublished in the UK by SATVUK).  The Documentary synchronizes The Beatles' performance of the Compositions with the visual images in the film.  The right to reproduce a composition in synchronization with a visual image (i.e., a film) requires a synchronization license from the copyright owner.  It is undisputed that Hunt, Iambic, WPMC and Ace never obtained any license from SATV (indeed, Iambic and WPMC admitted they lacked any license in their pleadings in the UK Action).

This action is thus the mirror image of the UK Action.  It is a transparent exercise in forum shopping and an attempt to collaterally challenge the copyright infringement claims brought by SATV and SATVUK in the UK Action.  Ace's declaratory judgment claim here takes the exact same position that Hunt is taking in opposing the infringement claims in the UK Action.  Ace contends that because a *videotape* of the Concert was purportedly transferred without copyright notice, both the concert footage and the Compositions are not subject to protection.  Such contention is wrong as a matter of law (and fact) but, for purposes of this motion, that issue will be determined in the prior pending UK Action.

Equally important, the UK Injunction, consented to by Hunt on behalf of Iambic, WPMC and Ace, is fatal to all of Ace's other claims.  All of Ace's other claims assert that it was

prevented from exhibiting the Documentary due to an alleged conspiracy between SATV and Apple Corps. In fact, Ace was barred by the lawfully obtained UK Injunction to which its principal, Hunt, consented. That indisputable fact requires dismissal of all of Hunt/Ace's claims as a matter of law pursuant to Rule 12(b)(6).

The resolution of the infringement claim in the UK Action will resolve every single claim advanced by Ace in this action. So why are we here? Because Hunt, who is Iambic, WPMC and Ace, is desperate to avoid litigating these issues in the UK Action.[2] Hunt's desire to avoid the UK courts does not warrant burdening this Court with having to adjudicate the very same basic issue that is being litigated in the UK Action. This action should be either dismissed or, at the very least, stayed, pending the determination of the UK Action.

## FACTS

SATV owns the worldwide copyrights in the Compositions written by John Lennon and Paul McCartney including for these purposes: "She Loves You," "All My Loving," "I Wanna Hold Your Hand," "This Boy," "From Me to You," "I Saw Her Standing There" and "I Wanna Be Your Man." SATV also owns 66.66% of the US copyrights and 100% of the foreign copyrights in "Twist & Shout." The Compositions all are registered with the US Copyright Office.

Ace is based in New York (Complaint at ¶ 12) and, along with Iambic and WPMC, is just another Hunt vehicle. In 2010, Iambic and/or WPMC produced the Documentary featuring the Compositions and sought a synchronization license from SATV. Hunt was the sole owner of Iambic and WPMC; a principal of Ace; and Ace's CEO. Ace obtained its purported right to distribute the Documentary from Iambic and/or WPMC. SATV made clear to Hunt that there

---

[2] The UK courts have recently found Hunt to be a completely unbelievable witness in another case where he tried to exploit compositions without a license.

were specific approvals required with respect to Lennon/McCartney songs involving portrayals of The Beatles (which Hunt never obtained).  In any event, as Hunt admitted in the UK Action, no license was ever issued.  As reflected in the Complaint's timeline of events, SATV heard nothing further from Hunt for nearly two years.  In April 2012, SATV discovered that Hunt, acting through Ace, intended to release the Documentary in the US in May of 2012 without a license, apparently distributing the Documentary pursuant to an agreement between Ace and Screenvision Exhibition, Inc. ("Screenvision").

A.      **The United Kingdom Action**

SATV commenced the UK Action against Iambic and WPMC – Ace's licensor(s) - in May of 2012, to prevent the unlicensed exploitation of the Compositions in the Documentary. Admitting they had no license, Iambic and WPMC claimed none was needed because the footage of the Concert supposedly had been "published" without a copyright notice.[3]  Nevertheless, on behalf of himself, Iambic and WPMC, Hunt consented to the entry of  the UK Injunction providing that, pending the trial of the UK Action, Iambic and WPMC (as well as Ace):

> "[W]ill not (whether by its directors, officers, employees or agents or howsoever otherwise) take any step to or authorize any other entity, ***including but not limited to Ace Arts LLC ('Ace'),*** to take any step to exploit the documentary film 'The Beatles: The Lost Concert' (the 'Documentary') featuring any or any substantial part of any of the musical compositions set out in the Schedule to this Consent Order whether through theatrical exhibition in the USA pursuant to Ace's agreement with Screenvision, Exhibition Inc ('Screenvision') or otherwise howsoever." (Emphasis added).

(See Injunction Order, annexed to Declaration of Lisa M. Buckley (the "Buckley Decl.") at Ex.

F). Ace's claim that the exhibition of the Documentary was impeded by the wrongful actions of

---

[3] The assertion that there was a divesting publication of the Concert footage by sale of the footage is frivolous (and if pursued, will warrant Rule 11 sanctions).  Moreover, the owner of the Compositions has never authorized any publication.  As the Complaint concedes, there was apparently a single closed circuit broadcast of the Concert in 1964 (which is also not publication as a matter of law).

SATV and Apple Corps ignores that Hunt (who is Ace's puppeteer) consented to the UK Injunction.

**B.      The Complaint In This Action[4]**

SATV's Particulars of Claims and the Defence in the UK Action (Buckley Decl. at Exs. D and E) confirm that there is a single determinative issue in this action and the UK Action: whether SATV's Compositions can be exploited in the Documentary without a synchronization license.  In the UK Action, Iambic and WPMC claim they can do so, as Ace does here.  If, as SATV claims in the UK Action, Iambic and WPMC required a license – which they admitted they lacked – Ace's complaint is baseless.

Beyond its declaratory judgment claim – which is the defense to the prior-pending UK Action – Ace accuses SATV and Apple Corps of an anti-trust conspiracy and various forms of tortious interference, both with its agreement with Screenvision and with unidentified theoretical others.  These claims, too, are totally dependent on the outcome of the UK Action.  Ace claims that when SATV advised Screenvision of the "baseless" UK Action – apparently Hunt prefers to adjudicate the merits of the claims for himself - Screenvision refused to proceed with the exhibition of the Documentary without "written confirmation that Ace had the right to use the songs in the Documentary." (Complaint at ¶ 80).

In fact, Screenvision advised Ace that unless it had a license to use the Compositions – which Ace lacked – it could not proceed with and cancelled the Ziegfeld premiere.  (Id. at ¶82).  Wishing away the UK Injunction; pretending Hunt did not consent to the UK injunction; and, ignoring established copyright law, Ace contends that the "baseless" UK Action was motivated by SATV's relationship with Apple Corps and intended to "to cause Screenvision and the

---

[4] Ace had originally filed a complaint in the United States District Court for the Central District of California.  Ace voluntarily withdrew the California Complaint after Defendants sent it a Rule 11 letter.  Several months later Ace filed here, changing some of its allegations to try, unsuccessfully, to address some of the issues defendants pointed out in their letter.

Ziegfeld Theater to back out of their distribution agreements with Ace in the absence of a written license from SATV." (Id. at ¶¶ 55, 59). Ace's allegations in the Complaint demonstrate that Screenvision did not breach its distribution contract with Ace. They further establish that SATV's commencement and pursuit of the UK Action, and its advising Screenvision of the action, are privileged. And, Ace's Sherman Act conspiracy claim fails to state a cognizable claim on several independent grounds.

The fundamental issue in this case, whether Iambic and WPMC had the right to produce and authorize the exhibition of the Documentary embodying the Compositions without a license from SATV, will be determined in the UK Action. Every other claim lacks any legal or factual basis and are, in any event, barred by the UK Injunction entered on Hunt's consent.

## ARGUMENT

### I.     THE COMPLAINT SHOULD BE DISMISSED OR STAYED PENDING THE RESOLUTION OF THE FIRST-FILED UK ACTION

Federal Courts possess inherent power to dismiss or stay an action in deference to a prior pending action in another state or country. Landis v. North American Co., 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); Quanzhou Joerga Fashion Co. v. Brooks Fitch Apparel Grp., LLC, No. 10 Civ. 9078 (MHD), 2012 U.S. Dist. LEXIS 143334, at *30 (S.D.N.Y. Sept. 28, 2012); Argus Media, Ltd. v. Tradition Fin. Servs. Inc., No. 09 Civ. 7966 (HB), 2009 U.S. Dist. LEXIS 120866, at *20-21 (S.D.N.Y. Dec. 29, 2009); Continental Time Corp. v. Swiss Credit Bank, 543 F. Supp. 408, 410 (S.D.N.Y. 1982). "[C]omity of the courts" is a set of principles "whereby judges decline to exercise jurisdiction over matters more appropriately adjudged elsewhere." Hartford Fire Ins. Co. v. California, 509 U.S. 764, 817 (1993) (Scalia, J., dissenting).

In assessing whether to dismiss or stay an action in deference to a foreign pending action, courts consider several factors including, *inter alia*, the similarity of parties and issues, the interests of judicial economy, the adequacy of the alternate forum, the order in which the actions were filed and general considerations of fairness and prejudice to either party. <u>Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc.</u>, 466 F.3d 88, 94 (2d Cir. 2006); <u>Continental Time Corp.</u>, 543 F. Supp. at 410.

Hunt is behind Ace and the defendants in the UK Action. This action should be dismissed or stayed pending resolution of the first-filed UK Action because: (1) Ace's claims are dependent on the rights of Iambic and WPMC, which are Hunt vehicles that are the defendants in the UK Action; (2) a single determination of the same copyright infringement issue will resolve both actions, furthering judicial economy, avoiding duplicative litigation and the risk of inconsistent judgments; (3) the UK Court can provide complete and adequate relief to Iambic and WPMC, on which Ace's rights and claims depend (and Ace can join in the UK Action); and (4) Hunt should not be permitted to forum shop by hiding behind the Ace facade, engaging in duplicative litigation. Ace (Hunt) will not be prejudiced because its rights are purely derivative of Iambic and WPMC and their "rights" have been at issue in the UK Action for over eighteen months.[5]

There is no question that the determination of the infringement claims in the UK Action will dictate the outcome of this case. If Iambic and WPMC had no right to use the Compositions without license, Ace has no claim. Indeed, given that the exhibition of the Documentary was restrained by the UK Injunction issued on Hunt's consent, Ace has no claim in any event because

---

[5] As Hunt/Ace know, the UK Action had been stalled due to Hunt having placed Iambic into receivership in the UK and having filed a personal bankruptcy (both of which followed the adverse judgment against them in the case in which the UK Court found Hunt's testimony to be unbelievable). Presumably to shelter assets in his bankruptcy, Hunt also handpicked someone else to front for WPMC (while he continues to pull all strings). The UK Action is now moving forward.

Ace was included in the consent Injunction Order that barred the exhibition, not any allegedly wrongful action by SATV or Apple Corps.

### A. The Parties and the Issues Are Substantially Similar So As to Require a Dismissal or Stay of This Action

Sufficient similarities exist between the parties and claims to warrant dismissal or stay of this action in deference to the prior-pending UK Action. See MLC (Berm.) Ltd. v. Credit Suisse First Boston Corp., 46 F. Supp. 2d 249, 251-52 (S.D.N.Y. 1999); Advantage Int'l Mgmt. v. Martinez, No. 93 Civ. 6227 (MBM), 1994 U.S. Dist. LEXIS 12535, at *14 (S.D.N.Y. Sept. 2, 1994) (dismissing second action in deference to prior-pending action in Spain because of judicial economy, risk of inconsistent judgments and similarity of issues); Quanzhou Joerga Fashion Co., 2012 U.S. Dist. LEXIS 143334, at *31 (staying case pending outcome of China suit in part because that case "involves precisely the same events and the same loss as is claimed here"). Complete identity of parties or issues is not necessary. Rather, "[a]ll that is required … is that the parties and issues be sufficiently similar so that when a judgment issues from the foreign court, res judicata will apply." Advantage Int'l Mgmt., 1994 U.S. Dist. LEXIS 12535, at *14; see also Argus Media Ltd., 2009 U.S. Dist. LEXIS 120866, at *20-21.

Ace has tried to draft around the identity of the real parties and issues, but the substantial overlap of the parties and the issues remain clear and warrant dismissing or staying this action pending the determination of the UK Action. The UK Action will determine SATV's copyright infringement claim and that determination will resolve the fundamental issue in this case and be res judicata.[6]

---

[6] Principles of comity warrant that res judicata and collateral estoppel attach to any decision rendered by the UK Court in connection with the fundamental copyright question at issue in the UK Action: whether defendants there (and plaintiff here) can exploit the Compositions without a license from SATV.  Res judicata and collateral estoppel attach when a valid final judgment on the merits has been rendered that involves an issue actually litigated and essential to the judgment and where the party against whom estoppel is asserted, or **a party in privity with the party against whom estoppel is asserted,** had a full and fair opportunity to litigate the issue in the earlier

**B.    The Interests of Judicial Economy Require
       A Dismissal or Stay of the New York Action**

Courts routinely dismiss or stay a second action in deference to a prior pending action in order to promote the interests of judicial economy.  See Lesavoy v. Lane, 304 F. Supp. 2d 520, 536-37 (S.D.N.Y. 2004), vac'd in part on other grounds, Lesavoy v. Gattullo-Wilson, 170 Fed. Appx. 721 (2d Cir. 2006) ("Without a dismissal, [defendant] will be forced to litigate the same issues in two forums, resulting in inconvenience to the parties, waste of judicial resources, and risk of inconsistent judgments."); see also MLC (Berm.) Ltd., 46 F. Supp. 2d at 254 ("Where a single court is capable of fairly and competently adjudicating an entire controversy, there is little reason to divide the task between two courts. "); Quanzhou Joerga Fashion Co., 2012 U.S. Dist. LEXIS 143334, at *32. This is particularly true where there is a risk of inconsistent judgments. Continental Time Corp., 543 F. Supp. at 410 (dismissing second action in deference to pending action based on finding of, *inter alia*, risk of inconsistent judgments); Advantage Int'l Mgmt., 1994 U.S. Dist. LEXIS 12535, at *6-7; see also Lesavoy, 304 F. Supp. 2d at 536-37.

Here, the fundamental issue is the same copyright claim at issue in the UK Action. The same issue should not be litigated in two different courts. This Court should not expend judicial resources determining the same issue at the heart of the UK Action that has been pending for eighteen months. Hunt should not be permitted to manipulate jurisdictions by using the fiction of Ace – whose rights are derived from and dependent on those of Iambic and WPMC—to avoid the UK Action.

---

proceeding.  See generally Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497 (2001); Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979).  The very same copyright question is the question here.  Ace is in privity with Iambic and WPMC because Ace derives its purported distribution rights from one or both of them.  Therefore, sufficient similarities exist between the parties and claims to require dismissing or staying this action in deference to the prior-pending UK Action.

C.    **The UK Action Offers Ace Complete and Adequate Relief**

Ace can obtain complete and adequate relief in the UK Action.  Courts in the United Kingdom provide adequate procedural and substantive safeguards and offer all remedies available here. CIBC Mellon Trust Co. v. Mora Hotel Corp. N.V., 100 N.Y.2d 215, 222, 762 N.Y.S.2d 5, 10 (2003) ("Moreover, '[c]onsidering that our own jurisprudence is based on England's, a defendant sued on an English judgment will rarely be in a position to defeat it with [a showing of due process deficiencies].'") (quoting David D. Siegel, 2001 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5304:1, 2003 Pocket Part, at 65)); see also Flame S.A. v. Industrial Carriers, 777 F. Supp. 2d 717, 719-720 (S.D.N.Y. 2011) ("Any suggestion that England's system of courts does not provide impartial tribunals or procedures compatible with the requirements of due process of law borders on the risible.") (citations& quotations omitted); Tropp v. Corp. of Lloyd's, 385 Fed. Appx. 36, 38 (2d Cir. 2010) (quoting CIBC Mellon Trust, 100 N.Y.2d 215, 762 N.Y.S.3d 5).[7]

D.    **General Considerations of Fairness Require a Dismissal or Stay of This Action**

Dismissal or stay is also warranted by basic notions of fairness.  Credicom N.V. v. Colony Credicom, No. 99 Civ. 10486 (MBM), 2000 U.S. Dist. LEXIS 2916, at *6-7 (S.D.N.Y. Mar. 15, 2000).  Hunt is the central actor in this action and in the UK Action.  Having consented to the UK Injunction, now wearing his Ace hat, he pretends that its ability to exploit the Documentary was prevented by some alleged improper action by SATV and Apple Corps. Ace/Hunt should not be allowed to evade the consequences of his consent to an injunction by

---

[7] As set forth in Apple Corps' motion, the anti-trust claim asserted is baseless and pre-textual. In any event, what prevented the distribution of the Documentary was not some nefarious conspiracy between SATV and Apple Corps, but the UK Injunction entered on Hunt's consent. Hunt, who controls Ace (which is why Ace has not sued Hunt, WPMC and Iambic for its alleged losses) cannot complain about the impropriety of an injunction which was entered on his consent.

manipulating his vehicles and jurisdictions. Ace can obtain full redress for its purported claims in the UK Action, or here, after the UK Court determines the predicate copyright issues.

## II.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Beyond the foregoing reasons warranting dismissal or stay of this action, Ace's remaining five purported claims should be dismissed under Fed. R. Civ. P. 12(b)(6) (the sixth claim for a declaratory judgment of non-infringement should be dismissed as duplicative of the claims and defenses in the UK Action). Ace's Complaint fails to plead all of the necessary elements for its claim under the Sherman Act and its claims for tortious interference with contract, tortious interference with prospective economic relations, unfair competition and violations of N.Y. GBL § 349.

### A.   The Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 540 U.S. 544, 555 (2007); see also Colliton v. Donnelly, 399 Fed. Appx. 619, 620 (2d Cir. 2010) (the complaint must plead enough facts to state a claim to relief that is plausible on its face). Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. While the allegations of the complaint must be taken as true on a Rule 12(b)(6) motion to dismiss, "conclusions of law or unwarranted deductions of fact are not admitted." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) (citation & quotations omitted); Colliton, 399 Fed. Appx. at 620. "Simply, bald assertions and conclusions of law do not prevent the dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6)." Oparaji v. City of N.Y., No. 97-14967, 1998 U.S. App. LEXIS 14967, at *4 (2d Cir. Apr. 21, 1998) (internal citations and quotations omitted).

Further, "[i]n considering a motion to dismiss, a court may consider documents annexed to the complaint or incorporated in the complaint by reference without converting the motion to dismiss into a motion for summary judgment." Graham v. Barriger, 699 F. Supp. 2d 612, 623 (S.D.N.Y. 2009) (citations omitted); see also Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991) ("In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.").

**B.      Ace Fails to State a Claim Under The Sherman Act**

A claim under Section 1 of the Sherman Act requires that plaintiff both delineate a plausible relevant market[8] and that the challenged action had an actual adverse effect on competition as a whole in that relevant market. Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 96 (2d Cir. 1998). Ace has failed to sufficiently plead any of those requirements.

**(i)      Ace's Claim Must Be Dismissed, Because It Failed To Plead A Relevant Market With Reference To Interchangeability And Cross-Elasticity Of Demand**

To allege a properly defined relevant product market *requires* reference to the fundamental antitrust concepts of interchangeability and elasticity of demand. Chapman v. New York State Div. for Youth, 546 F.3d 230, 238 (2d Cir. 2008). Where a plaintiff fails to provide such defined market, encompassing interchangeable substitute products, the relevant market is insufficient and dismissal proper. Id.; see also Flash Elecs. v. Universal Music, 312 F. Supp. 2d 379, 390-391 (E.D.N.Y. 2004); United Magazine Co. v. Murdoch Magazines Distrib., 146 F.

---

[8] Contrary to Ace's absurd *per se* rule assertion, the United States Supreme Court has made clear that "antitrust law does not permit the application of the *per se* rule in the boycott context in the absence of a horizontal agreement." Nynex Corp. v. Discon, 525 U.S. 128, 138 (1998). SATV and Apple Corps are not horizontal competitors and Ace does not contend otherwise. See, e.g., Complaint at ¶ 59. Ace's claims are, at best, subject to the rule of reason. See, e.g., Theee Movies of Tarzana v. Pacific Theatres, Inc., 828 F.2d 1395, 1398 (9th Cir. 1987) ("Clearances are vertical non-price restraints of trade.") (citations omitted); Linzer Prods. Corp. v. Sekar, 499 F. Supp. 2d 540, 554 (S.D.N.Y. 2007) ("Vertical exclusive dealing arrangements such as section 14.4 of the Agreement are presumptively lawful").

Supp. 2d 385, 398 (S.D.N.Y. 2001), aff'd, 279 Fed. Appx. 14 (2d Cir. 2003); Smith & Johnson v. Hedaya Home Fashions, No. 96 Civ. 5821 (MBM), 1996 U.S. Dist. LEXIS 19023, at *18 (S.D.N.Y. Dec. 24, 1996) (same).  Ace merely claims "that the relevant market is Beatles-related historical audio-visual media," (Complaint at ¶ 95) which is conclusory and insufficient and fails to account for interchangeability and elasticity of demand.  Emigra Group, LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP, 612 F. Supp. 2d 330, 359 (S.D.N.Y. 2009).

      Moreover, an artificially narrow market consisting of a single product cannot constitute a "relevant market," as a matter of law.  See, e.g., Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc., 713 F. Supp. 2d 286, 298 (S.D.N.Y. 2010); United Magazine Co., 146 F. Supp. 2d at 398; Belfiore v. New York Times Co., 826 F.2d 177, 180 (2d Cir. 1987); Mathias v. Daily News, L.P., 152 F. Supp. 2d 465, 482 (S.D.N.Y. 2001); Shaw v. Rolex Watch, U.S.A., Inc., 673 F. Supp. 674, 679 (S.D.N.Y. 1987).

      The rejection of single product markets has been consistently applied in cases involving music and other performing arts.  See, e.g., Carell v. Shubert Org., 104 F. Supp. 2d 236, 265 (S.D.N.Y. 2000); Theatre Party Assocs. Inc. v. Shubert Org., Inc., 695 F. Supp. 150, 154-55 (S.D.N.Y. 1988); Joplin Enters. v. Allen, 795 F. Supp. 349, 353 (W.D. Wash. 1992); Rock River Communs., Inc. v. Universal Music Group, Inc., No. CV08-635 CAS (AJWx), 2011 U.S. Dist. LEXIS 46023, at *47 (C.D. Cal. Apr. 27, 2011) (rejecting a market consisting of Bob Marley sound recordings).  Ace's proposed market is impermissibly narrow and therefore, fails as a matter of law.

      An antitrust claim must assert "'some anticompetitive effect *beyond [their]own loss of business or the market's loss of a competitor*.'"  Rock TV Entm't, Inc. v. Time Warner, Inc., No. 97 Civ. 0161 (LMM), 1998 U.S. Dist. LEXIS 799, at *10 (S.D.N.Y. Jan. 30, 1998) (emphasis in

original; citation omitted); see also North Jersey Secretarial Sch., Inc. v. McKiernan, 713 F.

Supp. 577, 583 (S.D.N.Y. 1989); E & L Consulting, Ltd. v. Doman Indus., 472 F.3d 23, 29 (2d

Cir. 2006). Ace fails to assert any injury to its make believe market, only that exhibition of the

Documentary was (lawfully) enjoined. The lack of any allegation of harm to competition

generally in the purported market is fatal to Ace's Section 1 claim. Rock TV Entm't, Inc., 1998

U.S. Dist. LEXIS 799, at *10.

### (ii)   Defendants' Actions Were Privileged By The Noerr-Pennington Doctrine

Unless objectively baseless, the *Noerr-Pennington* doctrine generally excludes litigation

activity from antitrust scrutiny. See, e.g., I-2A P. E. Areeda & H. Hovenkamp, Antitrust Law: An

Analysis Of Antitrust Principles And Their Application, ¶ 202a (2012). This includes pre-

litigation correspondence. Primetime 24 Joint Venture v. NBC, 219 F.3d 92, 100 (2d Cir. 2000);

see also DirecTV, Inc. v. Lewis, No. 03-CV-6241-CJS-JWF, 2005 U.S. Dist. LEXIS 8187, at *19

(W.D.N.Y. Apr. 29, 2005).

Ace complains that SATV notified Screenvision of the UK Action (which, despite Hunt's

consent to the UK Injunction, it labels "baseless") and threatened suit. (Complaint at ¶¶ 76-80).

However, acting to protect one's copyright is protected by the Noerr-Pennington doctrine. See

Primetime 24 Joint Venture, 219 F.3d at 100; Columbia Pictures Indus. v. Redd Horne, 749 F.2d

154, 161 (3d Cir. 1984); Edward B. Marks Music Corp. v. Colorado Magnetics, Inc., 497 F.2d

285, 290 (10th Cir. 1974); Orth-O-Vision, Inc. v. Home Box Office, 474 F. Supp. 672, 687

(S.D.N.Y. 1979).

Calling the UK Action "baseless" does not make it so. The Compositions are used in the

Documentary without license. At the least, that provides a "plausible claim" for infringement,

defeating any claim of sham. Maverick Recording Co. v. Chowdhury, No. CV-07-640(DGT),

2008 U.S. Dist. LEXIS 63783, at *9 (E.D.N.Y. Aug. 19, 2008). The UK Action in no way satisfies the Supreme Court's requirement of objective baselessness for a "sham" litigation. Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60-61 (1993); see also Ginx, Inc. v. Soho Alliance, 720 F. Supp. 2d 342, 363 (S.D.N.Y. 2010). Ace's antitrust claim should be dismissed as *it*, not the UK Action, is baseless.

### C.   Ace Fails to State a Claim for Tortious Interference with Contract

The elements of a claim for tortious interference with contract are: (1) existence of a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional procuring of the breach of that contract; (4) actual breach of the contract, and (5) damages. RSM Prod. Corp. v. Fridman, 643 F. Supp. 2d 382, 405 (S.D.N.Y. 2009), aff'd, 387 Fed. Appx. 72 (2d Cir. 2010) (citing Kirch v. Liberty Media Corp., 449 F.3d 388, 402 (2d Cir. 2006)).

Tortious interference with contract also requires "but for" causation and factual specificity as to each element. Astor Holdings, Inc. v. Roski, No. 01 Civ. 1905 (GEL), 2002 U.S. Dist. LEXIS 758, at *48 (S.D.N.Y. Jan. 15, 2002) (citing Antonious A. Alevizopoulos & Assocs. v. Comcast Int'l Holdings, Inc., 100 F. Supp. 2d 178, 186 (S.D.N.Y. 2000)); see also Sharma v. Skaarup Ship Mgmt. Corp., 916 F.2d 820, 828 (2d Cir. 1990) ("In addition, a [claimant] must allege that there would not have been a breach but for the activities of defendants.") (internal quotations and citations omitted); RSM Prod. Corp., 643 F. Supp. 2d at 405 ("'[T]he law requires some factual specificity in pleading tortious interference.'") (quoting World Wide Commc'ns, Inc. v. Rozar, No. 96 Civ. 1056 (MBM), 1997 U.S. Dist. LEXIS 20596, at *26 (S.D.N.Y. Dec. 29, 1997)).

Moreover, a key inquiry is whether the alleged interference lacked "reasonable justification." Jews for Jesus, Inc. v. Jewish Community Relations Council, Inc., 968 F.2d 286,

292 (2d Cir. 1992) (quoting <u>Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.</u>, 50 N.Y.2d 183, 189-90, 428 N.Y.S.2d 628 (1980)); <u>P. Kaufmann, Inc. v. Americraft Fabrics, Inc.</u>, 232 F. Supp. 2d 220, 224 (S.D.N.Y. 2002) (citing <u>Enercomp, Inc. v. McCorhill Publ'g Inc.</u>, 873 F.2d 536, 541 (2d Cir. 1989)).

As Ace admits, Screenvision required Ace (and Iambic and WPMC) to produce written proof that SATV issued a license. (Complaint at ¶ 80). They had no license. SATV had no obligation to issue a license and therefore its refusal to issue a license cannot be tortious interference because it is neither lacking reasonable justification nor improper. Moreover, the Documentary could not be exhibited in any event due to the UK Injunction issued on Hunt's consent. That, too, is not tortious interference. Ace's tortious interference claim should be dismissed under Rule 12(b)(6).

### i.   <u>Ace Fails to Allege a Breach</u>

Tortious interference requires an actual breach of the purported contract. <u>Lennon v. Seaman</u>, 63 F. Supp. 2d 428, 433 (S.D.N.Y. 1999) (dismissing plaintiff's claim for failure to plead an actual breach) (citing <u>NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.</u>, 87 N.Y.2d 614, 620, 641 N.Y.S.2d 581 (1996)); <u>see also</u> <u>Millar v. Ojima</u>, 354 F. Supp. 2d 220, 230 (E.D.N.Y. 2005) ("In order to state a claim, the plaintiff is required to 'identify a specific contractual term that was breached.'") (quoting <u>Risley v. Rubin</u>, 272 A.D.2d 198, 199, 708 N.Y.S.2d 377, 378 (1st Dep't 2000)); <u>Robins v. Max Mara, U.S.A., Inc.</u>, 923 F. Supp. 460, 468 (S.D.N.Y. 1996); <u>Cerveceria Modelo, S.A. de C.V. v. USPA Accessories LLC</u>, No. 07 Civ. 7998 (HB), 2008 U.S. Dist. LEXIS 28999, at *7 (S.D.N.Y. Apr. 10, 2008).

Ace has not claimed any breach of contract by Screenvision. As Ace admits, "Screenvision informed Ace that Screenvision would not authorize the Ziegfeld premier unless Ace provided written confirmation from Sony/ATV … that Ace had the rights to use the Songs

in the Documentary" and that "[w]hen Ace could not provide such written confirmation, *Screenvision cancelled the Ziegfeld Premiere*." (Complaint at ¶ 124-125). But this is not a claim of breach (and notably Ace has not sued Screenvision for breach).[9]

Without a breach, Ace's claim for tortious interference with contract must be dismissed. See, e.g., Cerveceria Modelo, S.A. de C.V., 2008 U.S. Dist. LEXIS 28999, at *7-9; Orange County Choppers, Inc. v. Olaes Enters., 497 F. Supp. 2d 541, 562 (S.D.N.Y. 2007); G-I Holdings, Inc. v. Baron & Budd, 179 F. Supp. 2d 233, 253 (S.D.N.Y. 2001) (dismissing a tortious interference with contract claim for both the failure to allege "a valid, existing contract or any terms of contract with a third party," as well as **how** the third party breached its contract with the plaintiff) (emphasis added; citation omitted).

### ii.    Ace Fails to Allege the Requisite "But For" Causation

Beyond the absence of any breach of contract, Ace has not alleged facts showing that SATV's actions were the 'but for' cause of the supposed (but non-existent) breach of contract. Granite Partners, L.P. v. Bear, Stearns & Co., 17 F. Supp. 2d 275, 293 (S.D.N.Y. 1998); see also Sharma, 916 F.2d at 828 ("[T]he district court properly dismissed Count III of the amended complaint for failure to allege that [defendant's] actions were the 'but for' cause of [plaintiff's] alleged breach of the Settlement Agreement."). Since there is no claim of breach, Ace cannot possibly allege that SATV is the "but for" cause of a breach that did not happen.

Ace represented to Screenvision that the Documentary would not infringe copyright. SATV had every right to notify Screenvision that it had sued Iambic and WPMC for copyright infringement. Screenvision had the right to suspend exhibition if it received a claim. In any event, even absent SATV's notification, Ace could not lawfully have permitted Screenvision to

---

[9] In Paragraph 8.1(c) of Ace's agreement with Screenvision (an unsigned copy of which is attached as Exhibit A to the Complaint, presumably because it was signed by Hunt), Ace represented and warranted that the Documentary would not infringe on copyright. Under Paragraph 12, Screenvision had the right to suspend exhibition if it received a claim. Thus, Ace, not Screenvision, breached their contract by failing to obtain a license for the Compositions.

exhibit the Documentary because Hunt consented to the UK Injunction which prohibited any exhibition of the Documentary.

Thus, both because Ace has not alleged and cannot allege that Screenvision breached its contract with Ace or that SATV's conduct was a "but for" cause of the non-existent breach, its tortious interference claim must be dismissed.  See, e.g., Sharma, 916 F.2d at 828 (dismissing tortious interference claim where plaintiff's theory of the case was incompatible with an allegation of "but for" causation); see also Grocery Haulers, Inc. v. C&S Wholesale Grocers, Inc., No. 11 Civ. 3130 (DLC),  2011 U.S. Dist. LEXIS 103694, at *7 (S.D.N.Y. Sept. 12, 2011).

### iii.    Ace Fails to Allege that SATV's Conduct Was Improper

Ace also fails to satisfy the third required element, that the alleged interference was improper.   In making this determination, the New York Court of Appeals has adopted the approach set forth in the Restatement (Second) of Torts § 767 (1979)." Jews for Jesus, Inc., 968 F.2d at 292:

> This approach requires a balancing of factors to determine whether the interference was justified under the circumstances of the particular case. These factors include: the nature of the defendant's conduct, the defendant's motive, the interests of the plaintiff with which the defendant interferes, the interests defendant seeks to advance, the social interests at stake, the proximity of the defendant's conduct to the interference, and the relations between the parties.

Id. (citations omitted) ; see also International Minerals & Resources, S.A. v. Pappas, 96 F.3d 586, 595 (2d Cir. 1996) (quoting same); Cerveceria Modelo, S.A. de C.V., 2008 U.S. Dist. LEXIS 28999, at *10-11; Masefield AG v. Colonial Oil Indus., No. 05 Civ. 2231 (PKL), 2006 U.S. Dist. LEXIS 5792, at *15 (S.D.N.Y. Feb. 14, 2006).

Ace has alleged that SATV informed Screenvision of the UK Action and of its infringement claim (Complaint at ¶¶ 79-80).   As a matter of law, "[s]eeking to protect a copyright by alerting a third party that the copyright is being infringed constitutes a justification

defense to this claim." P. Kaufmann, Inc., 232 F. Supp. 2d at 225 (quoting Shapiro & Son
Bedspread Corp. v. Royal Mills Associates, 764 F.2d 69, 75 (2d Cir. 1985) (rejecting argument
that notification of customers of alleged infringement and potential legal consequences for
selling infringing products was unlawful interference with business because "plaintiff's actions
were not improper, since if in fact Shapiro has a valid copyright in the … design, as may prove
to be the case, sellers of infringing works may indeed be subject to certain sanctions.").

SATV notified Screenvision of the UK Action, that SATV had not licensed the use of its
Compositions in the Documentary and that SATV claimed that the Documentary infringed
SATV's copyrights in the Compositions.  SATV had every right to put Screenvision on such
notice.  Ace's tortious interference claim must be dismissed because, as a matter of law, SATV
did nothing improper.  See, e.g., One Hundred Pearl v. Vantage Secs., No. 93 Civ. 7214 (PKL),
1995 U.S. Dist. LEXIS 3193, at *10-12 (S.D.N.Y. Mar. 15, 1995).

**D.    Ace Fails to State a Claim for Tortious
Interference with Prospective Economic Relations[10]**

A tortious interference with prospective economic advantage claim requires pleading that
plaintiff "'(1) had a business relationship with a third party; (2) the defendant knew of that
relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or
used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to
the relationship.'" Kirch, 449 F.3d at 400 (quoting Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d
Cir. 2003)); see also Orbit One Communs. v. Numerex Corp., 692 F. Supp. 2d 373, 384 (S.D.N.Y.
2010); American Bldg. Maint. Co. v. ACME Prop. Servs., 515 F. Supp. 2d 298, 316 (N.D.N.Y
2007) (quoting Scutti Enters. v. Park Place Entm't Corp., 322 F.3d 211, 217 (2d Cir. 2003)).

---

[10] "Courts refer to this cause of action by a number of different names, including 'prospective economic advantage,
beneficial business relations, prospective business advantage, and business or economic relations.' Regardless of
which term or phrase is used, the same legal standards apply." Henneberry v. Sumitomo Corp. of Am., 415 F. Supp.
2d 423, 465-66 fn. 23 (S.D.N.Y. 2006) (quoting PPX Enters., Inc. v. Audiofidelity Enters., Inc., 818 F.2d 266, 269
(2d Cir. 1987), abrogated on other grounds by Hannex Corp. v. GMI, Inc., 140 F.3d 194, 206 (2d Cir. 1998)).

As the Court stated in <u>Medtech Prods. v. Ranir, LLC</u>, 596 F. Supp. 2d 778, 815 (S.D.N.Y. 2008) because a prospective relationship is more speculative than a contract, liability "will be imposed only on proof of more culpable conduct on the part of the interferer under a tortious interference with business relationship claim. Thus, a plaintiff must allege more culpable conduct on the part of the defendant for such a claim than for a claim for tortious interference with contractual relations." (internal citations & quotations omitted). <u>See</u>, <u>Henneberry v. Sumitomo Corp. of Am.</u>, 532 F. Supp. 2d 523, 547 (S.D.N.Y. 2007); <u>see also</u> <u>Kramer v. Pollock-Krasner Found.</u>, 890 F. Supp. 250, 258 (S.D.N.Y. 1995) (a tortious interference with prospective economic advantage claim is "very difficult to sustain"); <u>G-I Holdings, Inc.</u>, 179 F. Supp. 2d at 252 ("Because courts are more protective of contracts than prospective relationships, a higher degree of interference is required to plead the claim."). "This cause of action has a 'limited scope.'" <u>Gianni Versace, S.P.A. v. Versace</u>, No. 01 Civ. 9645 (PKL) (THK), 2003 U.S. Dist. LEXIS 2587, at *4-5 (S.D.N.Y. Feb. 24, 2003) (quoting <u>Piccoli A/ S v. Calvin Klein Jeanswear Co.</u>, 19 F. Supp. 2d 157, 169 (S.D.N.Y. 1998)).  For multiple reasons, Ace has not stated and cannot state a valid claim for tortious interference with prospective economic relations.

### i.    Ace Fails to State a Relationship "Not Amounting to a Formal Contract" As To Screenvision

First, Ace alleges a contract with Screenvision. (Complaint at ¶ 120).  Ace "cannot merely re-package [its] tortious interference with contract claim as a claim for tortious interference with prospective business relations." <u>RSM Prod. Corp.</u>, 643 F. Supp. 2d at 411.  <u>See also</u>, <u>Antonios A. Alevizopoulos & Assoc.</u>, 100 F. Supp. 2d at 187.  Ace's claim for tortious

interference with prospective business relations should be dismissed as a pure relabeling of the same claim as its tortious interference with contract claim.[11]

### ii.    Ace Fails to Allege a Business Relationship With Any Other Entity

Beyond re-labeling, Ace merely theorizes about SATV's supposed interference with its relationships with "other U.S. movie theater chains, two American television networks, and two DVD labels," failing to identify a single one with whom it had an ongoing business relationship. (Complaint at ¶ 133). The Complaint thus cannot withstand a motion to dismiss. See, e.g., Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC, 808 F. Supp. 2d 552, 568 (S.D.N.Y. 2011) (holding that allegations regarding "hotel-casino owners and operators," "potential development partners or sublicensees," and "one or more lenders to [defendants] ... fail to 'specify some particular, existing business relationship' sufficient to state a claim.") (quoting Minnesota Mining and Mfg. Co. v. Graham-Field, Inc., No. 96 Civ. 3839 (MBM), 1997 U.S. Dist. LEXIS 4457, at *23 (S.D.N.Y. Apr. 8, 1997)); see also Sedona Corp. v. Ladenburg Thalmann & Co., Inc., No. 03 Civ. 3120 (LTS) (THK), 2005 U.S. Dist. LEXIS 16382 (S.D.N.Y. Aug. 8, 2005); Kasada, Inc. v. Access Capital, Inc., No. 01 Civ. 8893 (GBD), 2004 U.S. Dist. LEXIS 25257, at *64 (S.D.N.Y. Dec. 10, 2004).

### iii.    Ace Fails to Allege Malice or Dishonest, Unfair, or Improper Means[12]

Ace's complaint also fails to plead that SATV acted "solely out of malice" or used "wrongful means." Treppel v. Biovail Corp., No. 03 Civ. 3002 (PKL), 2005 U.S. Dist. LEXIS

---

[11] Compare: Complaint ¶ 123, regarding tortious interference with contract: "Sony/ATV communicated directly with Screenvision on May 3, 2012 ... falsely stating to Screenvision that the Documentary infringed on Sony/ATV's copyrights and demanding that Screenvision not exhibit the Documentary," and ¶ 134 regarding tortious interference with prospective economic relations: "Sony/ATV intentionally conveyed false information to Screenvision and Ziegfeld Theater regarding the copyright status of the Documentary and demanded that they not exhibit the Documentary."

[12] Though the language is similar, whether or not a defendant acted "solely out of malice" or using "dishonest, unfair, or improper means" differs from the "improper" or "without justification" inquiry under tortious interference with contract. See, e.g., Cerveceria Modelo, S.A. de C.V., 2008 U.S. Dist. LEXIS 28999, at *11-12 ("This is the signal difference between a claim for tortious interference with business relations, which requires that the tortfeasor acted 'solely out of malice' or used 'wrongful means,' and a claim for tortious interference with contract, which requires only 'improper' conduct.'").

2737, at *10 (S.D.N.Y. Feb. 22,  2005) (citing <u>Carvel Corp.</u>, 350 F.3d at 17). "Such a cause of action 'does not lie absent an allegation that the action complained of was motivated solely by malice or to inflict injury by unlawful means rather than by self-interest or other economic considerations.'" <u>Kramer</u>, 890 F. Supp. at 258 (quoting <u>Entertainment Partners Group, Inc. v. Davis</u>, 198 A.D.2d 63, 64, 603 N.Y.S.2d 439, 440 (1st Dep't 1993); <u>RSM Prod. Corp.</u>, 643 F. Supp. 2d at 412; <u>see also</u> <u>Vinas v. Chubb Corp.</u>, 499 F. Supp. 2d 427, 434 (S.D.N.Y. 2006).  As the Court noted in <u>Kahn v. Salomon Brothers, Inc.</u>, 813 F. Supp. 191, 195 (E.D.N.Y. 1993), if a defendant is pursuing its own interests, the alleged misconduct must rise to the level of being fraudulent or criminal.

Ace's own complaint negates an essential element of its own claim by asserting that SATV's actions were in furtherance of its business relationship with Apple Corps (in fact, SATV was protecting its own copyrights). (Complaint at ¶¶ 119, 123).  All Ace alleges that SATV did was commence the UK Action and communicate to Screenvision that it commenced the UK Action because Hunt/Ace had no license. (Id.)  Those are hardly fraudulent or criminal actions. Either way, Ace's claim for tortious interference with economic relations should be dismissed because it has not asserted and cannot plead that SATV acted out of malice or by wrongful means. <u>See, e.g.</u>, <u>Kramer</u>, 890 F. Supp. at 258; <u>see also</u> <u>Lions Gate Entm't Corp. v. Icahn</u>, No. 10 Civ. 08169 (HB), 2011 U.S. Dist. LEXIS 29832, at *4 (S.D.N.Y. Mar. 23, 2011).

### iv.    <u>Ace Fails to Allege Injury</u>

For the same reason that Ace's theoretical and unidentified prospective relations are insufficient so too does it fail to show a "but for" loss of business.  <u>Riddell Sports v. Brooks</u>, 872 F. Supp. 73, 78 (S.D.N.Y. 1995) ("In order to state such a claim, a plaintiff must allege that, but for defendant's conduct, his prospective business relations would have coalesced into actual contracts.") (citing <u>Fine v. Dudley D. Doernberg & Co.</u>, 203 A.D.2d 419, 610 N.Y.S.2d 566 (2d

Dep't 1994))  See also Premium Mortg. Corp. v. Equifax Info. Servs., LLC, 583 F.3d 103, 107

(2d Cir. N.Y. 2009) (quoting Vigoda v. DCA Prods. Plus Inc., 293 A.D.2d 265, 266, 741

N.Y.S.2d 20, 23 (1st Dep't 2002)).  Ace's vague allegations about having "engaged in business

discussions and exchanged information with potential third-party distributors and exhibitors of

the Documentary" do not remotely come close to satisfying the requirement of alleging that but

for SATV's conduct, these amorphous and unidentified relations would have coalesced into

actual contracts.   (Complaint at ¶¶ 133,139).   Moreover, it was Hunt's consent to the UK

Injunction, not SATV's actions, that prevented the distribution of the Documentary.

### E.      Ace Fails to State a Claim for Unfair Competition under N.Y. Common Law

Ace also fails to state a claim for unfair competition under New York common law.  New

York has "long recognized two theories of common-law unfair competition: palming off and

misappropriation." ITC Ltd. v. Punchgini, Inc., 9 N.Y.3d 467, 476, 850 N.Y.S.2d 366, 372 (2007).

"Palming off" is "the sale of the goods of one manufacturer as those of another." Id.  There is no

allegation of "palming off" in this case.

The misappropriation doctrine prohibits a "'broader range of unfair practices which may

be generally described as a misappropriation of the skill, expenditures, and labor of another.'"

All R's Consulting, Inc. v. Pilgrims Pride Corp., No. 06 Civ. 3601 (DAB), 2008 U.S. Dist. LEXIS

30626, at *37-38 (S.D.N.Y. Mar. 28, 2008) (quoting E. R. Squibb & Sons, Inc. v. Cooper Labs.,

Inc., 536 F. Supp. 523, 526 (S.D.N.Y. 1982)). "The tort of unfair competition 'usually concerns

the taking and use of the plaintiff's property to compete against the plaintiff's own use of the

same property.'" Volvo North Am. Corp. v. Men's Int'l Professional Tennis Council, 857 F.2d

55, 75 (2d Cir. 1988) (quoting Roy Export Co. Establishment v. CBS, 672 F.2d 1095, 1105 (2d

Cir. 1982)).  There is no allegation anywhere that SATV misappropriated anything.  Instead,

SATV simply brought the UK Action to prevent Iambic and WPMC from misappropriating its copyrighted Compositions. Ace's unfair competition claim is fatally deficient.

**F.   Ace Fails to State a Claim for Violation of N.Y. GBL § 349**

Plaintiff also fails to state a claim under New York General Business Law §349. "'Unlike common law unfair competition, New York Section 349 is designed to address broad consumer-protection concerns.'" All R's Consulting, 2008 U.S. Dist. LEXIS 30626, at *39 (quoting Gaidon v. Guardian Life Ins. Co. of Am., 94 N.Y.2d 330, 343, 704 N.Y.S.2d 177 (1999)). "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995)). "The issue, under this statute, is whether a customer was mislead by misrepresentations about consumer goods that in turn injured the Plaintiff." All R's Consulting, 2008 U.S. Dist. LEXIS 30626, at *40.

"Courts have repeatedly held that 'a consumer, for §349 purposes, is one who purchase[s] goods and services for personal, family or household use.'" Eaves v. Designs for Fin., Inc., 785 F. Supp. 2d 229, 265 (S.D.N.Y. 2011) (citing Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc., 328 F. Supp. 2d 443, 448 (S.D.N.Y. 2004)) (alteration in original) (internal quotation marks omitted); see also Cruz v. NYNEX Info. Res., 263 A.D.2d 285, 289, 703 N.Y.S.2d 103, 106 (1st Dep't 2000) ("In New York law, the term 'consumer' is consistently associated with an individual or natural person who purchases goods, services or property primarily for 'personal, family or household purposes.'") (citation omitted). Spirit Locker, Inc. v. EVO Direct, LLC, 696 F. Supp. 2d 296, 304 (E.D.N.Y. 2010) (dismissing claim for violation of GBL § 349 where

plaintiff did not allege that defendant's conduct was directed to consumers); see also Eaves, 785 F. Supp. 2d at 266 (quoting same).

If possible, this claim is even more fatuous than the rest of Ace's claims. Neither Ace nor Screenvision is an individual or natural person who purchases goods, services or property primarily for personal, family or household purposes – for §349 purposes. Ace is not bringing this claim on behalf of consumers (which it has no standing to do anyway). Its assertion that SATV's actions "did affect consumers who had already purchased tickets to the screening" is meaningless (and there is no showing that any such supposed consumers did not receive back their money). Accordingly, Ace's claim for violation of GBL §349 must be dismissed. See, e.g., All R's Consulting, 2008 U.S. Dist. LEXIS 30626, at *40-41 (dismissing plaintiff's claim without leave to amend where plaintiff alleged no conduct directed toward consumers).

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that SATV's motion should be granted and that this action be dismissed or, in the alternative, either stayed pending the outcome of the UK Action, or that the first and third through sixth claims be dismissed with prejudice under Rule 12(b)(6).

Dated: New York, New York
       December 9, 2013

PRYOR CASHMAN LLP

By: _____
       Donald S. Zakarin (DZ 6355)
       Lisa M. Buckley (LB 5541)
7 Times Square
New York, New York 10036
Tel: (212) 421-4100
Fax: (212) 326-0806
*Attorneys for Defendant Sony/ATV Music
Publishing LLC*

25